# Exhibit A



PALAIS DES NATIONS • 1211 GENEVA 10, SWITZERLAND
www.ohchr.org • TEL: +41 22 917 9000 • FAX: +41 22 917 9008 • E-MAIL: registry@ohchr.org

**CONFIDENTIAL**
24 April 2025

Dear Ms. Kimberly Troup,

    I write to you in my capacity as United Nations Special Rapporteur on the situation of human rights in the Palestinian territory occupied by Israel since 1967, pursuant to resolution 1993/2A of the then Commission on Human Rights. The primary task of my mandate involves investigating and reporting on human rights violations that take place in the occupied Palestinian territory, namely the Gaza Strip and the West Bank including East Jerusalem.

    I am currently preparing my annual report to the UN Human Rights Council on the matter of the private sector's involvement in Israel's occupation, in the context of the genocidal violence unfolding in the occupied Palestinian territory, upon which I have twice reported ([here](#) and [here](#)). On 15 October 2024, I issued an open [call for input](#) and, in view of the vast number of alleged violations committed by a wide range of private actors, including arms manufacturers, raw material suppliers, tech companies, banks, insurance companies, pension funds, universities, I intend to highlight some of these actors in my upcoming report.

    In this context, I am aware of the following information that concerns Christian Friends of Israeli Communities (CFOIC Heartland):

1. CFOIC Heartland is a faith-based organisation with non-profit 501c3 tax-exempt status in the United States. CFOIC has close ties with the Dutch Christian Zionist organisation, Christians for Israel (C4I), receiving an annual portion of the C4I budget, and is sometimes described as C4I's 'daughter organisation'.
2. CFOIC Heartland is set up with the explicit purpose to "enable Christians to connect with the Jewish communities (settlements) in the heart of Biblical Israel. Judea and Samaria (the "West Bank") is not occupied territory. It is the birthplace of the Jewish people." The American Director has stated that CFOIC Heartland's

Ms. Kimberly Troup, director of the Christian Friends of Israeli Communities'
7661 McLaughlin Road, #255
Falcon, CO 80831
USA

kim@cfoic.com



      'humanitarian' work is intended to reinforce and strengthen illegal Israeli occupation, stating "the more that we build, the more that we support and encourage their right to live in the land, the harder it's going to be for disengagement, for withdrawal."

3. CFOIC Heartland provides project-based assistance to illegal settlements across in the occupied West Bank, including some of those home to the most consistently violent settlers in the West Bank.
4. CFOIC Heartland has directly contributed to the construction and expansion of illegal Jewish only settlements in the West Bank, including funding in conjunction with C4I one entire neighbourhood built on stolen land of Deir Istiya.
5. CFOIC Heartland has funded military and security equipment for illegal Jewish only settlements and the Israeli military operating in the West Bank. It has also purchased drones, bullet proof vests, two-way radios and beepers for use by Israeli settlers, as a result of encouraging donations for this purpose and receiving a considerable influx of donations since October 2023. This enables and encourages Israeli settler violence that has increased significantly since October 2023.
6. CFOIC Heartland also encourages its supporters to visit Biblical sites in the occupied territories and offers help with arranging such tours, with the aim to demonstrate presence and "show our support for IDF soldiers" and "displaced families" in "Judea, Samaria, the Jordan Valley and the Gaza Border areas".

      My mandate found that, based on all of the information reviewed, there are reasonable grounds to believe that CFOIC Heartland is violating its responsibilities as set out in the [Guiding Principles on Business and Human Rights](#), which constitute the framework that companies and other private actors follow to fulfill their responsibilities concerning human rights. These principles include the obligation to undertake human rights due diligence processes to identify risks and violations and take material action towards ameliorating and/or remedying those risks and violations. These violations may also trigger criminal liability where international crimes are implicated.

      In the occupied Palestinian territory, the Guiding Principles must be read in conjunction with the responsibilities emanating from the [Advisory Opinion](#) of the International Court of Justice (ICJ) of 19 July 2024 on the "Legal Consequences Arising from the Policies and Practices of Israel in the Occupied Palestinian Territory, including East Jerusalem". The Court found Israel's occupation - composed of its military presence, settlements, associated infrastructures, control of Palestinian natural resources - to be unlawful in its entirety on the basis of sustained violations of two peremptory norms of international law: the right to self-determination of the Palestinian people and the prohibition on the acquisition of territory by force, which constitutes the international crime of aggression under the Rome Statute of the International Criminal Court (ICC). The ICJ explicitly affirmed that "occupation cannot transfer or confer sovereign title to the occupying Power over the territory that it occupies", Israel's security concerns cannot override peremptory norms, and "the Palestinian people's right to self-determination cannot be subject to conditions on the part of [Israel], in view of its character as an inalienable right".



The right of self-determination is the most fundamental and existential right for all human beings, as it pertains to the inherent capability of a people to exist and determine themselves *as a people* in a given territory, free from foreign control and occupation. Without this right, a people - such as the Palestinians, most of whom live under Israeli occupation - are unable to exercise control over their lives and resources in the territory recognized under international law and consensus for their own exclusive and independent statehood. As a result, the denial of self-determination taints with illegality all other actions exercised against the will of the Palestinian people and jeopardises their other fundamental rights, from the rights to liberty, fair trial, movement, safe and adequate housing, dignified employment, and last but not least the right to live in safety and dignity of every Palestinian, men and women, the elderly and children alike. For decades and counting, the Israeli occupation has systematically violated Palestinian self-determination and territorial sovereignty by seizing, annexing, fragmenting, and transferring its civilian population to the occupied territory (for more, here).

The ICJ also noted that Israel's occupation is in breach of the law prohibiting racial segregation and apartheid. It has been therefore determined that Israel's occupation must be withdrawn totally and unconditionally by 18 September 2025, according to the General Assembly A/ES-10/24. Until such time as this happens, there must be no recognition, aid or assistance rendered that would assist in maintaining these wrongful acts.

Furthermore, in 2024, the ICJ has issued provisional measures connected to the risk of genocide in Gaza in the matter of *South Africa v Israel*, and the ICC has issued arrest warrants in the *Situation in the State of Palestine* for Israeli Prime Minister, Benjamin Netanyahu and former Israeli Defense Minister, Yoav Gallant, on the basis that there are reasonable grounds to believe they have committed war crimes and crimes against humanity related to persecution, widespread and/or systematic murder and starvation, and directing attacks against the civilian population in the oPt.

The applicable legal framework and the gravity of the situation on the ground in the occupied Palestinian territory, particularly in Gaza, indicate that there are reasonable grounds to believe that CFOIC Heartland is **contributing to gross human rights violations that require the immediate cessation** of the concerned business activity, and the remedy of the harm done to Palestinians. Such is the sustained gravity of the situation, proper human rights due diligence would have identified these responsibilities before the catastrophic events that have unfolded since October 2023. The continued failure to act responsibly in line with international law risks implicating CFOIC Heartland in an economy of much more serious violations, and increasing the associated liability. Indeed, given the international crimes being considered by the ICJ and the ICC, CFOIC Heartland is now **on notice of a serious risk of being implicated in international crimes**, the disregard of which may give rise to criminal liability, both for CFOIC Heartland and its executives. It is further noted that compliance with domestic laws of a given jurisdiction, does not absolve private entities of their responsibilities or liabilities under international law.

Based on the above, I find that there are reasonable grounds to believe CFOIC Heartland has engaged in activities that constitute violations of peremptory norms of international law and other critical legal principles and standards, including primarily:

1. Aiding and assisting in / contributing to the denial of the Palestinian right to self-determination;
2. Aiding and assisting in the maintenance of the unlawful permanent annexation of Palestinian territory;
3. Aiding and assisting in the maintenance of Israel's unlawful military occupation.

This situation exposes CFOIC Heartland to potential criminal liability for the material support it provides to maintain Israel's unlawful occupation, which constitutes the international crime of aggression under the Rome Statute.

Ancillary to this, there are reasonable grounds to believe CFOIC Heartland is also involved in and/or supporting the following violations, among others:

- Contributing to gross violations of human rights, including funding of illegal settlements activities, which constitute a war crime in and of itself; freedom of movement;
- Aiding and abetting in the war crime and crime against humanity of forcible transfer, through the facilitation of the taking of Palestinian land in the occupied West Bank and Jordan Valley;
- Aiding and assisting in Israel's discriminatory system that violates the prohibition on racial segregation and apartheid, particularly as it concerns access to water and agricultural land;
- Aiding and assisting in / contributing to gross violations of human rights and international humanitarian law, in the exploitation of the natural resources of the occupied Palestinian territory and the diversion of a large share of them to Israel's own population, including settlers, in violation of international humanitarian law;
- War crimes and crimes against humanity, including wilful killing, wilfully causing great suffering.

Please note that I may refer to this endeavor and related concerns in the report I am preparing for the Human Rights Council at its 59th that will take place from **16 June 2025 to 11 July 2025**. I would welcome any information or clarifications you may have on this by 24 May 2025. Please do send any information in writing to *hrc-sr-opt@un.org*.

Thank you for your kind assistance in this matter.

Francesca Albanese
Special Rapporteur on the situation of human rights in the Palestinian territory occupied since 1967

# Exhibit B



PALAIS DES NATIONS • 1211 GENEVA 10, SWITZERLAND
www.ohchr.org • TEL: +41 22 917 9000 • FAX: +41 22 917 9008 • E-MAIL: registry@ohchr.org

**CONFIDENTIAL**

24 April 2025

Dear Mr. Frank van Oordt,

I write to you in my capacity as United Nations Special Rapporteur on the situation of human rights in the Palestinian territory occupied by Israel since 1967, pursuant to resolution 1993/2A of the then Commission on Human Rights. The primary task of my mandate involves investigating and reporting on human rights violations that take place in the occupied Palestinian territory, namely the Gaza Strip and the West Bank including East Jerusalem.

I am currently preparing my annual report to the UN Human Rights Council on the matter of the private sector's involvement in Israel's occupation, in the context of the genocidal violence unfolding in the occupied Palestinian territory, upon which I have twice reported (here and here). On 15 October 2024, I issued an open call for input and, in view of the vast number of alleged violations committed by a wide range of private actors, including arms manufacturers, raw material suppliers, tech companies, banks, insurance companies, pension funds, universities, I intend to highlight some of these actors in my upcoming report.

In this context, I am aware of the following information that concerns Christians for Israel (*Stichting Christenen voor Israël*, C4I):

1. C4I is a large and most active organisation that operates in the Netherlands with two distinct arms: **Christians for Israel International** and **Stichting Christenen voor Israël**, as well as having an ongoing close association with Israel Products Center that split off from C4I early after its establishment. C4I has close ties with the American Christian Friends of Israeli Communities (CFOIC Heartland), which is sometimes described as C4I's 'daughter organisation'.
2. **Christians for Israel International** is a Dutch-registered non-profit (Chamber of Commerce No. 32070120) and a designated Public Benefit Organisation (ANBI). It is the global educational and advocacy arm, and operates in over 40 countries, working with local chapters, partner organizations, and regional coordinators through formal Affiliation Agreements - including Singapore, India, South Korea,

Mr. Frank van Oordt, Director of Christenen voor Israël
Postbus 1100
3860 BC Nijkerk
Netherland

info@christenenvoorisrael.nl

Australia, the Philippines, Vietnam, Zambia, the United States, Brazil, Austria, Albania, Belgium, Denmark, Germany, Greece, Italy, Switzerland, Ukraine, New Zealand, Fiji, the Cook Islands, Niue, Samoa, the Solomon Islands, Tonga, and Vanuatu. It organises conferences, lectures and symposia globally and funnels all its donations through Stichting Christenen voor Israël, including millions in funds received from these affiliates.

3. **Stichting Christenen voor Israël** is also a Dutch-registered non-profit (Chamber of Commerce No. 007649733) and a designated Public Benefit Organisation (ANBI), that is an operational foundation responsible for handling the humanitarian and material aid projects, including financial support for settlements in the West Bank.
4. Israel Products Center is a Dutch organisation that promotes Israeli exports, and was originally founded as part of C4I. C4I has directly contributed to the construction and expansion of illegal settlements in east Jerusalem and Salfit in the West Bank, including funding in conjunction with CFOIC Heartland one entire neighbourhood built on stolen land of Deir Istiya.
5. Since October 2023, C4I has directly funded Israeli organisations that train settlers in firearms usage, including one run by a lawyer who is known to represent especially conservative settlers and organisations involved in blocking aid convoys to Gaza and soldiers involved in well-documented torture practices against Isareli prisoners.
6. C4I's Business Club has financed projects in Salfit Governorate for the purpose of supporting the Israeli soldiers operating in the West Bank.
7. C4I funds Jewish immigration to Israel, including in the West Bank, providing stipends to those who settle there.
8. After October 7, 2023, C4I launched an emergency fund raising more than €3.6 million before the end of 2023, contributing financially to more than 40 projects.
9. C4I also sends much of its funds to CFOIC for distribution.

My mandate found that, based on all of the information reviewed, there are reasonable grounds to believe that C4I is violating its responsibilities as set out in the *[Guiding Principles on Business and Human Rights](#)*, which constitute the framework that companies and other private actors follow to fulfill their responsibilities concerning human rights. These principles include the obligation to undertake human rights due diligence processes to identify risks and violations and take material action towards ameliorating and/or remedying those risks and violations. These violations may also trigger criminal liability where international crimes are implicated.

In the occupied Palestinian territory, the Guiding Principles must be read in conjunction with the responsibilities emanating from the [Advisory Opinion](#) of the International Court of Justice (ICJ) of 19 July 2024 on the "Legal Consequences Arising from the Policies and Practices of Israel in the Occupied Palestinian Territory, including East Jerusalem". The Court found Israel's occupation - composed of its military presence, settlements, associated infrastructures, control of Palestinian natural resources - to be unlawful in its entirety on the basis of sustained violations of two peremptory norms of international law: the right to self-determination of the Palestinian people and the prohibition on the acquisition of territory by force, which constitutes the international crime of aggression under the Rome Statute of the International Criminal Court (ICC).



The ICJ explicitly affirmed that "occupation cannot transfer or confer sovereign title to the occupying Power over the territory that it occupies", Israel's security concerns cannot override peremptory norms, and "the Palestinian people's right to self-determination cannot be subject to conditions on the part of [Israel], in view of its character as an inalienable right".

The right of self-determination is the most fundamental and existential right for all human beings, as it pertains to the inherent capability of a people to exist and determine themselves *as a people* in a given territory, free from foreign control and occupation. Without this right, a people - such as the Palestinians, most of whom live under Israeli occupation - are unable to exercise control over their lives and resources in the territory recognized under international law and consensus for their own exclusive and independent statehood. As a result, the denial of self-determination taints with illegality all other actions exercised against the will of the Palestinian people and jeopardises their other fundamental rights, from the rights to liberty, fair trial, movement, safe and adequate housing, dignified employment, and last but not least the right to live in safety and dignity of every Palestinian, men and women, the elderly and children alike. For decades and counting, the Israeli occupation has systematically violated Palestinian self-determination and territorial sovereignty by seizing, annexing, fragmenting, and transferring its civilian population to the occupied territory (for more, here).

The ICJ also noted that Israel's occupation is in breach of the law prohibiting racial segregation and apartheid. It has been therefore determined that Israel's occupation must be withdrawn totally and unconditionally by 18 September 2025, according to the General Assembly A/ES-10/24. Until such time as this happens, there must be no recognition, aid or assistance rendered that would assist in maintaining these wrongful acts.

Furthermore, in 2024, the ICJ has issued provisional measures connected to the risk of genocide in Gaza in the matter of *South Africa v Israel*, and the ICC has issued arrest warrants in the *Situation in the State of Palestine* for Israeli Prime Minister, Benjamin Netanyahu and former Israeli Defense Minister, Yoav Gallant, on the basis that there are reasonable grounds to believe they have committed war crimes and crimes against humanity related to persecution, widespread and/or systematic murder and starvation, and directing attacks against the civilian population in the oPt.

The applicable legal framework and the gravity of the situation on the ground in the occupied Palestinian territory, particularly in Gaza, indicate that there are reasonable grounds to believe that C4I is **contributing to gross human rights violations that require the immediate cessation** of the concerned business activity, and the remedy of the harm done to Palestinians. Such is the sustained gravity of the situation, proper human rights due diligence would have identified these responsibilities before the catastrophic events that have unfolded since October 2023. The continued failure to act responsibly in line with international law risks implicating C4I in an economy of much more serious violations, and increasing the associated liability. Indeed, given the international crimes being considered by the ICJ and the ICC, C4I is now **on notice of a serious risk of being implicated in international crimes**, the disregard of which may give rise to criminal liability, both for C4I and its executives. It is further noted that compliance with domestic



laws of a given jurisdiction, does not absolve private entities of their responsibilities or liabilities under international law.

Based on the above, I find that there are reasonable grounds to believe C4I has engaged in activities that constitute violations of peremptory norms of international law and other critical legal principles and standards, including primarily:

1. Aiding and assisting in / contributing to the denial of the Palestinian right to self-determination;
2. Aiding and assisting in the maintenance of the unlawful permanent annexation of Palestinian territory;
3. Aiding and assisting in the maintenance of Israel's unlawful military occupation.

This situation exposes C4I to potential criminal liability for the material support it provides to maintain Israel's unlawful occupation, which constitutes the international crime of aggression under the Rome Statute.

Ancillary to this, there are reasonable grounds to believe C4I is also involved in and/or supporting the following violations, among others:

- Contributing to gross violations of human rights, including funding of settlements and settler activities, which also result in enabling settlers' violence toward Palestinians, violations of the right to life, the prohibition on torture, cruel and inhuman treatment; freedom of movement and adequate housing;
- Aiding and abetting in the war crime and crime against humanity of forcible transfer, through the facilitation of the taking of Palestinian land in the occupied West Bank and Jordan Valley;
- Aiding and assisting in Israel's discriminatory system that violates the prohibition on racial segregation and apartheid, particularly as it concerns access to water and agricultural land;
- Aiding and assisting in / contributing to gross violations of human rights and international humanitarian law, in the exploitation of the natural resources of the occupied Palestinian territory and the diversion of a large share of them to Israel's own population, including settlers, in violation of international humanitarian law;
- War crimes and crimes against humanity, including wilful killing, wilfully causing great suffering.

Please note that I may refer to this endeavor and related concerns in the report I am preparing for the Human Rights Council at its 59th that will take place from **16 June 2025 to 11 July 2025**. I would welcome any information or clarifications you may have on this by 24 May 2025. Please do send any information in writing to *hrc-sr-opt@un.org*.

Thank you for your kind assistance in this matter.

Francesca Albanese
Special Rapporteur on the situation of human rights in the Palestinian territory occupied since 1967

# Exhibit C



Informs • Inspires • Comforts

Nijkerk, 19 May 2025

To: Ms. Francesca Albanese - UN Special Rapporteur on Human Rights in the Palestinian territory occupied by Israel since 1967

**Non-Prejudicial and Confidential Communication**

Dear Ms. Albanese,

We write in response to your letter ("Letter") dated April 24, 2025, in which you make a number of factual and legal allegations, assertions and insinuations concerning the activities of the non-profit foundations Christenen voor Israël (CVI), Christians for Israel International (C4II) and the Christians for Israel affiliates globally (including Christians for Israel USA) (which we refer to collectively in this letter as "Christians for Israel" or "C4I") in relation to persons and entities located within the territory that is often referred to as "the West Bank", and which in this letter we will refer to as "Judea and Samaria".

The Letter is received in context of ongoing criticism of the exercise of your mandate. We note that the Dutch Foreign Minister recently refused to meet you and your invitation to address members of the Dutch Parliament was withdrawn, due to your bias and lack of objectivity. This bias and lack of objectivity is reflected in the Letter.

**Christians for Israel**
C4I gives financial support to projects providing humanitarian, non-violent assistance to persons and communities in Judea and Samaria – both Israelis and non-Israelis, Jews and Palestinians. C4I is committed to peaceful co-existence of Jews and non-Jews.

C4I categorically refutes and repudiates the claims, allegations, assertions and insinuations contained in the Letter that these activities constitute or contribute to violations of peremptory norms of international law and other critical legal principles and standards, and that C4I is involved in or supports violations of international humanitarian law, international human rights law or international criminal law.

These unsubstantiated legal and factual allegations and assertions damage, or threaten to damage, the reputation of C4I, and infringe C4I's right to freedom of religion.

C4I demands either a full retraction of such claims, etc, alternatively a full factual and legal substantiation thereof prior to 26 May 2025.

In this letter we make some non-prejudicial and preliminary remarks concerning the legal and regulatory framework applicable to Judea and Samaria, the factual allegations and insinuations in the Letter, and the legal assertions in the Letter.

+ 31 (0)33 422 04 05          Visiting address:                   P.O. Box 1100          IBAN: NL57 ABNA 0524.5052.09    1
info@c4israel.org             Henri Nouwenstraat 34               3860 BC Nijkerk        BIC: ABNANL2A
www.c4israel.org              3863 HV Nijkerk, The Netherlands    The Netherlands        Dutch Chamber of Commerce: No. 32070120



Informs • Inspires • Comforts

**The legal and regulatory framework applicable to the West Bank**
*Genocide*

According to the second paragraph of the Letter, these allegations, assertions and insinuations are made "in the context of the genocidal violence unfolding in the occupied Palestinian territory." Thus, at the outset, you disclose your prejudicial abandonment of legal reasoning, and lack of judicial restraint, by linking the unsubstantiated frame of "genocidal violence" with the mere presence of Israeli nationals in the West Bank. The use of the term "genocide" in this context is not only morally reprehensible, it is – in the mouth of a representative of the United Nations – politically irresponsible and legally dangerous.

The allegation of "genocide" is not only inflammatory, but also the subject of legal proceedings currently before the International Court of Justice in The Hague. The court has yet to review and decide on the merits of South Africa's claims. Its provisional measures have not required Israel to cease its military operations in Gaza in pursuit of its right to self-defence. Although limited to the situation in the Gaza Strip, the Court's findings in those proceedings may be relevant to the assessment of the situation in the West Bank. By using the term "genocidal violence" in relation to the activities of the State of Israel in Judea and Samaria, you are undermining the authority of the International Court of Justice, the principal judicial organ of the United Nations that you purport to represent.

Moreover, you assert: "the ICJ has issued provisional measures connected to the risk of genocide in Gaza in the matter of *South Africa vs Israel*, and the ICC has issued arrest warrants in the *Situation in the State of Palestine* for Israeli Prime Minister, Benjamin Netanyahu and former Israeli Defense Minister, Yoav Gallant, on the basis that there are reasonable grounds to believe they have committed war crimes and crimes against humanity related to persecution, widespread and/or systematic murder and starvation, and directing attacks against the civilian population in the oPt."

As you are fully aware, both the ICJ proceedings in the matter of *South Africa vs Israel* and the ICC arrest warrants are solely and exclusively limited to alleged activities of the State of Israel in the Gaza Strip since 7th October 2023. They cannot be relied on as providing a legal basis for assessing or determining legal liabilities of non-state entities in the West Bank.

*International Criminal law*

Concerning the ICC, the issuance of arrest warrants against Israeli political leaders concerning individual criminal liability for conduct in the context of Israel's war against Hamas in the Gaza Strip since October 2023 is entirely irrelevant to the question of whether C4I's provision of humanitarian aid to persons and organizations in Judea and Samaria has complied with international law. Moreover, the arrest warrants are the subject of jurisdictional challenges; legal rights and obligations cannot be derived from the issue of those warrants.

You assert that "the prohibition on the acquisition of territory by force … constitutes the international crime of aggression under the Rome Statute of the International

+ 31 (0)33 422 04 05  
info@c4israel.org  
www.c4israel.org

Visiting address:  
Henri Nouwenstraat 34  
3863 HV Nijkerk, The Netherlands

P.O. Box 1100  
3860 BC Nijkerk  
The Netherlands

IBAN: NL57 ABNA 0524.5052.09  
BIC: ABNANL2A  
Dutch Chamber of Commerce: No. 32070120



Criminal Court (ICC)". C4I denies this assertion and demands full clarification of the basis upon which you assert that acquisition of territory by force "constitutes the international crime of aggression."

*Occupation and territorial sovereignty*

Referring to "the responsibilities emanating from the Advisory Opinion of the International Court of Justice (ICJ) of 19 July 2024 on the "Legal Consequences Arising from the Policies and Practices of Israel in the Occupied Palestinian Territory, including East Jerusalem"", you state that "the Court found Israel's occupation - composed of its military presence, settlements, associated infrastructures, control of Palestinian natural resources - to be unlawful in its entirety on the basis of sustained violations of two peremptory norms of international law: the right to self-determination of the Palestinian people and the prohibition on the acquisition of territory by force …"

Further, you also assert: "It has been therefore determined that Israel's occupation must be withdrawn totally and unconditionally by 18 September 2025, according to the General Assembly A/ES-10/24."

As you are aware, the ICJ did not set a specific time frame for Israel's "presence" to be brought to an end. Further, UNGA resolutions are not legal determinations, rather they are political statements that are not binding under international law.

As you are also fully aware, Jewish communities have existed in Jerusalem, Judea and Samaria (known commonly as the West Bank) for thousands of years. The only period in history when this was not the case was 1948-1967, when Jordan occupied the area and killed or forcibly removed the Jewish population, in gross contravention of the UN Charter and general principles of international law. Is it suddenly illegal under international law for Jews to live in the old city of Jerusalem, Judea and Samaria - which were intended under the Mandate for Palestine to become part of the Jewish homeland, and in which article 6 of the Mandate recognized the right of Jews to "close settlement"?

Since 1967, the sovereign status of Judea and Samaria has been disputed. Both Israel and the Palestinians have sovereignty claims, which have never been decided. In the Oslo Accords (sanctioned by the UN Security Council) the parties have agreed to settle those claims through negotiations.

The Advisory Opinion of the International Court of Justice in July 2024, in which the court opined that Israel's occupation has become illegal, and that Israel must end its "presence" in these territories, is non-binding. Not only that, its legal and factual assertions are highly contentious, especially the assertion that Israel's presence in the territories has become "illegal". No less than six of the Court's fifteen members were highly critical of this "biased and one-sided" opinion. While important, the Opinion of the ICJ does not change the law, or bind the parties to the conflict.

Notably, the Court failed to adequately analyze the sovereign status of Judea and Samaria. Furthermore, the Court failed to take adequate account of the Oslo Accords, which are binding agreements sanctioned by the Security Council of the United Nations, the international body you purport to represent. Under those agreements, Israel has,

+ 31 (0)33 422 04 05
info@c4israel.org
www.c4israel.org

Visiting address:
Henri Nouwenstraat 34
3863 HV Nijkerk, The Netherlands

P.O. Box 1100
3860 BC Nijkerk
The Netherlands

IBAN: NL57 ABNA 0524.5052.09
BIC: ABNANL2A
Dutch Chamber of Commerce: No. 32070120

3



for the interim period until a permanent status agreement has been reached, full administrative and military control and civil and criminal law jurisdiction in Area C. It was agreed in the Oslo Accords that Israeli settlements and settlers could remain in Area C during the interim period, pending a permanent status deal. The Palestinians obtained no commitments from Israel to refrain from building new settlements or expanding existing settlements during the interim period. Nor did they get a right to statehood. The resolution of disputes between Israel and the PLO ("the sole legitimate representative of the Palestinian people") is governed by the Oslo Accords (1993-1995).

Concerning international law of belligerent occupation, whatever the status of the Israeli military administration and of Israel's official settlement policies, individual Jews or groups of Jews who voluntarily establish themselves in this area are not, in doing so, acting in contravention of international human rights law or humanitarian law. Providing financial support to members of those communities for the purposes of non-violent activities therefore does not, in and of itself, infringe international law.

### Unsubstantiated legal and factual assertions

C4I demands immediate, full and detailed specification of the factual sources upon which the following general legal and factual allegations and assertions are made:
- "there are reasonable grounds to believe that C4I is **contributing to gross human rights violations that require the immediate cessation** of the concerned business activity, and the remedy of the harm done to Palestinians.
- "The continued failure to act responsibly in line with international law risks implicating C4I in an economy of much more serious violations, and increasing the associated liability. Indeed, given the international crimes being considered by the ICJ and the ICC, C4I is now **on notice of a serious risk of being implicated in international crimes**, the disregard of which may give rise to criminal liability, both for C4I and its executives."

In addition to the foregoing, C4I demands immediate, full and detailed specification of the basis upon which the following specific legal and factual allegations and assertions are made that threaten to damage the reputation of C4I:

"There are reasonable grounds to believe C4I has engaged in activities that constitute violations of peremptory norms of international law and other critical legal principles and standards, including primarily:
1. Aiding and assisting in / contributing to the denial of the Palestinian right to self-determination;
2. Aiding and assisting in the maintenance of the unlawful permanent annexation of Palestinian territory;
3. Aiding and assisting in the maintenance of Israel's unlawful military occupation."

In addition to the foregoing, C4I demands immediate, full and detailed specification of the basis upon which the following specific legal and factual allegations and assertions are made that threaten to damage the reputation of C4I:

+ 31 (0)33 422 04 05
info@c4israel.org
www.c4israel.org

Visiting address:
Henri Nouwenstraat 34
3863 HV Nijkerk, The Netherlands

P.O. Box 1100
3860 BC Nijkerk
The Netherlands

IBAN: NL57 ABNA 0524.5052.09
BIC: ABNANL2A
Dutch Chamber of Commerce: No. 32070120

4

"There are reasonable grounds to believe C4I is also involved in and/or supporting the following violations, among others:
- Contributing to gross violations of human rights, including funding of settlements and settler activities, which also result in enabling settlers' violence toward Palestinians, violations of the right to life, the prohibition on torture, cruel and inhuman treatment; freedom of movement and adequate housing;
- Aiding and abetting in the war crime and crime against humanity of forcible transfer, through the facilitation of the taking of Palestinian land in the occupied West Bank and Jordan Valley;
- Aiding and assisting in Israel's discriminatory system that violates the prohibition on racial segregation and apartheid, particularly as it concerns access to water and agricultural land;
- Aiding and assisting in / contributing to gross violations of human rights and international humanitarian law, in the exploitation of the natural resources of the occupied Palestinian territory and the diversion of a large share of them to Israel's own population, including settlers, in violation of international humanitarian law;
- War crimes and crimes against humanity, including wilful killing, wilfully causing great suffering.

C4I demands immediate, full and detailed specification of the basis upon which the following specific legal and factual allegations and assertions are made that threaten to damage the reputation of C4I:

- Contribution to the construction and expansion of illegal settlements in east Jerusalem and Salfit in the West Bank;
- C4I funds – alone or in conjunction with CFOIC – Heartland one entire neighbourhood built on stolen land of Deir Istiya.
- Since October 2023, C4I has directly funded Israeli organisations that train settlers in firearms usage, including one run by a lawyer who is known to represent especially conservative settlers and organisations involved in blocking aid convoys to Gaza and soldiers involved in well-documented torture practices against Israeli prisoners.
- C4I's Business Club has financed projects in Salfit Governorate for the purpose of supporting the Israeli soldiers operating in the West Bank.
- C4I funds Jewish immigration to Israel, including in the West Bank, providing stipends to those who settle there.

**Right to freedom of religion**
Any attempts to cause reputational harm also potentially restrict the rights to freedom of conscience and religion of C4I and its supporters and members. . These freedoms are explicitly safeguarded under Article 18 of the ICCPR, Article 9 of the ECHR, and Article 46 of the EU Charter of Fundamental Rights. Each of these instruments guarantees individuals and organizations the right to manifest religious beliefs, which includes engaging in humanitarian assistance based on religious convictions.

+ 31 (0)33 422 04 05         Visiting address:                    P.O. Box 1100          IBAN: NL57 ABNA 0524.5052.09   5
info@c4israel.org            Henri Nouwenstraat 34              3860 BC Nijkerk        BIC: ABNANL2A
www.c4israel.org             3863 HV Nijkerk, The Netherlands   The Netherlands        Dutch Chamber of Commerce: No. 32070120



Informs • Inspires • Comforts

**Procedural concerns**

C4I is deeply concerned about due process breaches in inquiries conducted under your mandate. Public exposure of private actors in this manner – without clear procedural safeguards – risks serving as a covert sanction for actions intended to damage the reputation and standing of entities without fair opportunity for contestation. This concern is particularly heightened when such exposure affects faith-based organizations that conduct humanitarian and religious missions.

To ensure transparency and procedural fairness, we demand clarification forthwith on the following:

1. Whether private entities have access to the allegations and underlying evidence (or summaries of evidence) before public exposure.

2. Whether mechanisms exist for independent assessment of findings made within the Special Procedures framework or otherwise.

3. What safeguards are in place to prevent unjust reputational harm to faith-based organizations and other implicated actors.

**In conclusion**

C4I remains at all times committed to responsible engagement and adherence to rigorous human rights due diligence standards in all of its activities.

However, we hereby put your office on notice that we are not – and will not allow ourselves to be – intimidated by unsubstantiated insinuations and assertions, albeit on United Nations letterhead, of the nature contained in the Letter.

Christians for Israel (including CVI, C4II and the national C4I affiliates) demands a full written response to the above requests prior to close of business on 26 May 2025, and reserves all rights to take legal proceedings or other measures in relation to the matters addressed in this Letter.

Sincerely,

Frank van Oordt, Executive Director, Stichting Christenen voor Israël

+ 31 (0)33 422 04 05   Visiting address:   P.O. Box 1100   IBAN: NL57 ABNA 0524.5052.09   6
info@c4israel.org   Henri Nouwenstraat 34   3860 BC Nijkerk   BIC: ABNANL2A
www.c4israel.org   3863 HV Nijkerk, The Netherlands   The Netherlands   Dutch Chamber of Commerce: No. 32070120