Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CHRISTIAN FRIENDS OF ISRAELI
COMMUNITIES, CHRISTIANS FOR
ISRAEL ~~INTERNATIONAL~~ USA,

*Plaintiffs*,

v.

FRANCESCA PAOLA ALBANESE,

*Defendant*.

**Civil Action No. 1:25-cv-2805**

### Plaintiffs' ~~Motion~~ Amended Motion to Request Recognition of Effective Service, or in the Alternative, Request for Substitute Service

Christian Friends of Israeli Communities and Christians for Israel ~~International~~ USA, (collectively, "Plaintiffs"), by their undersigned counsel, hereby file this Amended Motion ~~motion~~ for the Court to recognize service as having been effectuated on Francesca Paola Albanese ("Defendant" or "Albanese") and assert its exercise of jurisdiction over her, as supported by the accompanying affidavit, or, in the alternative, to order substitute service.[1]

### INTRODUCTION

On September 8, 2025, Plaintiffs filed a complaint against Defendant for defamation, trade libel, and intentional interference with prospective economic advantage. ECF No. 1. Since that

---

[1] Attached as Exhibit D is a redline of the Initial and Amended Motion, as required pursuant to D.C.COLO.LCivR 15.1.

2

time, Plaintiffs have made extraordinary efforts at considerable time and expense to locate and serve Albanese, a foreign defendant, pursuant to Rule 4(f) of the Federal Rules of Civil Procedure.

On October 25, 2025, Plaintiffs, in compliance with the applicable rules and regulations, approached Defendant to serve her in South Africa. Defendant was given actual notice of the above-captioned case and informed that process servers were attempting to serve her with the Complaint and Summons (collectively, "papers"). Defendant communicated with process servers through an intermediary, refused to come within close enough proximity of the process servers to be handed the papers, and explicitly announced her intention to try and evade service on that day and at any other time and place that Plaintiffs would attempt to serve her.

Given that Defendant has been provided with actual notice of the pendency of this litigation in substantial compliance with Rule 4(f), combined with Defendant's clear statement that she intends to evade service, Plaintiffs respectfully request that the Court recognize service as having been effectuated and exercise jurisdiction over Albanese, the appropriate measure when defendants attempt to evade service.  In the alternative, if the Court does not recognize service as having been effectuated, Plaintiffs request that the Court order a reasonable form of substitute service. [2]

**ARGUMENT**

---

[2] Plaintiffs are aware of the Court's local rule required a meet and confer prior to filing any motion. D.C. COLO. L. Civ. R. 7.1(a). Given that Defendant has chosen to intentionally frustrate any attempt to communicate with her, as documented in this Motion, Plaintiffs respectfully request that the Court waive Local Rule 7.1(a) and accept this Motion for review.

Following Plaintiffs filing their Complaint against Defendant, they embarked on what has amounted to a wild goose chase of the foreign defendant across the globe to effectuate service.[3] Given the imposition of sanctions on Defendant by the United States ("U.S.") government, *see* ECF No. 1, ¶¶ 12, 72-74, she is prohibited from entering U.S. territory. Therefore, Plaintiffs proceeded to attempt to serve Defendant in accordance with Rule 4(f) of the Federal Rules of Civil Procedure.

In or about October 2025, Plaintiffs became aware that Defendant was scheduled to be in Johannesburg, South Africa ("SA"), to present the Nelson Mandela Foundation's ("NMF") annual lecture. As SA is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Plaintiffs proceeded to effectuate service pursuant to Rule 4(f), which provides in pertinent part that an individual may be served in a foreign country by any method "reasonably calculated to give notice, as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. Pro 4(f)(2)(A).

Plaintiffs, under the guidance of experienced counsel barred in SA and retained for purpose of advising on service, arranged for service in accordance with SA Superior Courts Act Section 40, attached hereto as **Exhibit A**. Section 40 requires that a request for service by sheriff on a defendant in a foreign proceeding be submitted, together with the documents to be served, for

---

[3] On September 29, 2025, Plaintiffs mailed by First Class Mail waiver forms to Defendant pursuant to Rule 4(d) of the Federal Rules of Civil Procedure to her office address in Geneva, Switzerland, the only publicly-available address for her; in the interest of comprehensiveness, Plaintiffs also emailed these forms to Defendant that same day to the email address from which Defendant had previously communicated with Plaintiffs (hrc-sr-opt@un.org), *see* ECF No. 1, ¶ 32. Defendant was provided 60 days to respond to the waiver request, as required by Rule 4(d) for foreign defendants. Defendant has not responded to the waiver request.

4

approval from the Director-General of the South African Department of Justice and Constitutional Development. Plaintiff's received authorization to serve Defendant on October 24, 2025. Authorization Letter, attached hereto as **Exhibit B**. Plaintiff's local SA counsel, Justin Berman ("Berman"), then delivered to the local sheriff the authorization letter, the documents to be served, and provided instructions for conducting service. *See* Aff. of Justin Saul Berman, attached hereto as **Exhibit C**, at ¶¶ 15-19.

On October 25, 2025, the sheriff and Berman (collectively, "process servers") met at the convention center where Defendant was presenting the NMF lecture. *Id.* at ¶¶ 20-21. The sheriff identified himself and explained he was there to serve Defendant. Security contacted NMF General Counsel Tamryn Sass ("Sass"), who instructed the service processers to leave and return after Defendant completed her lecture to effectuate service. *Id.* at ¶ 22. The process servers returned to the convention center at the agreed-upon time to effectuate service, and Sass escorted them "to an area she had designated for service on [Defendant] to be affected"; after media became aware of the process servers' presence, the process severs were moved into Defendant's private suite to maintain privacy. *Id.* at ¶¶ 23-25. The process servers were repeatedly told by Sass and others that Defendant was on her way and "gave assurances that [Defendant] would not evade or refuse service." *Id.* at ¶ 24.

While the process servers waited for Defendant's arrival, Berman observed Sass being provided photographs of "specific pages" of the process packet "in order to advise [Defendant] appropriately." *Id.* at ¶ 28. Thereafter, Defendant's personal effects were removed from the private suite and apparently brought to Defendant who had gone to a different room in the convention center. *Id.* at ¶ 30. The process servers were then informed that Defendant "had allegedly been

advised by legal counsel from the United Nations not to accept service." *Id.* at ¶ 31. Subsequently, the sheriff received a phone call from his superior who informed him that the Board of Sheriffs had advised her that "an individual of high authority . . . instructed [him] . . .to immediately halt the service of process." *Id.* at ¶ 32. The sheriff was told that if he continued in his attempts to serve Defendant, he would be terminated and potentially arrested. *Id.*

The service processers were then placed on a second call by NMF officials with "an unidentified male individual, using [Sass's] phone" who, "on the direct instructions from [Defendant], stated unequivocally that [Defendant] would refuse service under any circumstances, irrespective of time or location." *Id.* at ¶ 34. Sass then returned to the private suite "and confirmed that [Defendant] remained resolute in her refusal to accept service." *Id.* at ¶ 35. The sheriff requested to leave the documents with Sass, as he was authorized to do, but he was instructed that he was forbidden to leave the documents anywhere or with anyone; the service processers were instructed to vacate the premises, which they did. *Id.* at ¶¶ 36-37.

Defendant was made "fully aware of the attempts" to serve her, "and had images of the documents sent to her electronically." *Id.* at ¶ 38. Her communications with the process servers, including through the intermediaries of Sass and the unidentified male, "indicated [her] understanding of the existence of the court proceedings, the parties involved and the nature and purpose of the documents intended of service." *Id.* at ¶ 38. Despite this, Defendant announced her intention to evade service and that she "categorical[ly] refus[ed] to accept service." *Id.* at ¶¶ 36, 40.

Consequently, Defendant has actual notice of the pendency of this litigation, which is sufficient to satisfy both the due process concerns animating service guidelines and Rule 4(f)'s requirement that the method of service on a foreign defendant be "reasonably calculated to give notice." *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 944 (10th Cir. 1987) ("The mere fact that the defendant did not actually scrutinize and read the summons and complaint is not violative of the standards of fair play and substantial justice required by due process."); *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998) ("[P]ersonal service should not become a degrading game of wiles and tricks nor should a defendant be able to defeat service simply by refusing to accept the papers[.]" (quotations and citations omitted)). Proof of Defendant's actual notice includes: the communications Defendant had, including through intermediaries, with the process servers wherein she made clear that she understood that they were there to serve her and announced that she intended to evade service; Defendant's apparent receipt and examination of photographs of the papers to be served; and Defendant's consultation with attorneys regarding her decision to evade.

There was also widespread media coverage of the entire affair, including a press conference at the convention center immediately following the process servers' last contact with Defendant, during which upon information and belief Defendant was asked about and responded to at least one question about the above-captioned case. Additionally, the SA Ministry of Justice later apologized to Defendant and expressed outrage that the Authorization Letter had been issued, despite Plaintiff's compliance with necessary and proper procedures.[4] In the SA government's

---

[4] These statements, while indicative of concerning corruption in SA, have no bearing on whether service was properly attempted, and, Plaintiffs argue, effectuated.

public statements, and concurring statements issued by the NMF, the Plaintiffs were named and the claims in the complaint were described.[5]

Defendant then engaged on X with social media posts about what had transpired—including responding directly to a photograph of the Authorization Letter, which was published by counsel for Plaintiffs in response to SA government officials' public statements falsely claiming no Authorization Letter had been issued.[6] These facts clearly establish that Defendant has received actual notice of the pendency of this litigation.

Moreover, the courts require "substantial, as opposed to strict compliance with notice statutes." *Grady v. Swisher*, No. 11-CV-02880-WYD-KLM, 2014 WL 3562794, at *10 (D. Colo. July 18, 2014). Therefore, service is effectuated where a "Defendant has had reasonable notice of the action against [her] and has had an opportunity to defend against it. The law requires no more regarding service." *Id.* (quoting and citing *Nikwei*, 822 F.2d at 944-45); *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1280–81 (S.D. Fla. 1999) (finding "[i]t is well-established that once a defendant has actual notice of the pendency of an action, the requirements of [Rule 4] are to be liberally construed," and holding service effectuated on a foreign defendant who ran away before the complaint could be physically handed to him).

Finally, not only is service automatically perfected when any defect resulted from Defendant's own evasion, but, as a result of the evasion, the court also has jurisdiction over the

---

[5]https://www.dailymaverick.co.za/article/2025-10-26-justice-department-apologises-over-albanese-court-papers-drama;https://www.justice.gov.za/m_speeches/2025/20251026-UN-Occupied-Palestinian-Territories-Min.html.

[6] https://x.com/FranceskAlbs/status/1982904671959429507.

defendant. *Nikwei*, 822 F.2d at 945-46 ("[S]ervice is perfected *and* the court has jurisdiction . . . a defendant cannot refuse or avoid service on a technical ground, and then exclaim he has not been correctly served." (emphasis added)); *Banco Latino*, 53 F. Supp. 2d at 1281 ("[n]otice of a complaint coupled with good faith attempted service" is "sufficient to confer jurisdiction where a party is evading service of process").

Based on the foregoing, Defendant has actual notice of the pendency of this litigation, and Plaintiffs respectfully request that the Court recognize that service has been effectuated and that it has jurisdiction over Defendant, the appropriate measure taken in response to Defendant's attempts to evade service.

***In the alternative***, Plaintiffs request that the Court order substitute service. Rule 4(f)(3) empowers the courts with broad discretion to approve "other means not prohibited by international agreement when conventional approaches fail. Given the difficulty in locating Defendant, Plaintiffs request that, if held necessary, that the Court order substitute service on the Defendant either by email or through social media. *QSR Int'l L.D.C. v. QZCR S.R.L.*, No. 25-CV-01750-GPG-CYC, 2025 WL 1993699, at *2 (D. Colo. July 17, 2025) (citing with approval *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017–18 (9th Cir. 2002), which spoke of the broad discretion courts have in crafting alternative service, including through technologically-advanced means).

Defendant's only publicly known email address, hrc-sr-opt@un.org, is the means by which Defendant sent threatening letters to Plaintiffs, ECF No. 1 at ¶ 32, and so Defendant presumably has access to this email account. Defendant is also active on her X social media account, @FranceskAlbs, and is highly likely to see documents served to her by tagging her account, as

evidenced by her previous engagement about this litigation on the platform.[7] *See Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-CV-02754-MSK-KMT, 2012 WL 122862, at *2 (D. Colo. Jan. 17, 2012) (citing with approval *New England Merchants*, 495 F. Supp. 73, 81 (S.D.N.Y. 1980), which approved of service by highly unconventional means with "little or no precedent in our jurisprudence" when necessary).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court recognize service as having been effectuated and exercise jurisdiction over Defendant due to her attempts to evade service, or, in the alternative, authorize a substitute form of service.

Dated February 13, 2025.

Respectfully Submitted,

NATIONAL JEWISH ADVOCACY CENTER, INC

*/s/ Rachel Sebbag*
Rachel Sebbag
NATIONAL JEWISH ADVOCACY CENTER, INC
1954 Airport Road Suite 1196
Atlanta, GA 30341
rachel@njaclaw.org
332.278.1100

*Attorneys for Plaintiffs*

---

[7] https://x.com/FranceskAlbs/status/1982904671959429507.