**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, CHRISTIANS FOR ISRAEL USA,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRANCESCA PAOLA ALBANESE,<br><br>*Defendant*. | Civil Action No. 1:25-cv-2805 |

**Plaintiffs' Supplemental Briefing in Support of Their Motion to Request Recognition of Effective Service or in the Alternative, Request for Substitute Service**

Christian Friends of Israeli Communities ("CFOIC") and Christians for Israel USA ("C4I USA") (collectively, "Plaintiffs"), by their undersigned counsel, hereby file supplemental briefing, as requested by the Court, ECF No. 16, in support of their motion for the Court to recognize service as having been effectuated on Francesca Paola Albanese ("Defendant" or "Albanese") and assert its exercise of jurisdiction over Defendant, or, in the alternative, to order substitute service.[1]

**INTRODUCTION**

Defendant, Francesca Albanese, seeks to shield her systematic defamation campaign of Plaintiffs behind the cover of immunity accorded to United Nations ("UN") Special Rapporteurs

---

[1] Plaintiffs filed an Amended Motion to Request Recognition of Service on February 17, 2026. ECF No. 21. The Amended Motion solely corrects a misnomer in the case caption and precatory paragraph of the original Motion, ECF No. 13, wherein Plaintiff Christians for Israel USA was mistakenly referred to as "Christians for Israel International." The same is true of Plaintiffs' Notice of Non-Opposition, originally filed as ECF No. 15, with the same errata, and corrected as ECF No. 23.

1

pursuant to a treaty and statute. Not all who would purport to invoke such immunity necessarily have it. The immunity is inextricably tied to the individual's official position with the UN, and only official acts taken in that capacity are protected. The predicate question, then, to whether anyone enjoys immunity as a UN Special Rapporteur is whether that person is, in fact, per the UN's own rules and regulations, a UN Special Rapporteur. Defendant is not. To be sure, at one time, Defendant was named and served as a UN Special Rapporteur, and in that capacity, she was entitled to functional immunity as a UN "expert" for acts taken within her mandate. However, at the conclusion of Defendant's term in April 2025, she was not reappointed consistent with the UN's own necessary and lawful processes. Defendant's exercise of the office since then has been *ultra vires*, and thus not shielded by the immunities that come with the office.

The US Government has staked out its clear position that Defendant's reappointment was defective and that consequently Defendant has not enjoyed immunity at any time relevant to these proceedings. The Government's position on this matter is confirmed by the fact that Defendant was placed on the Office of Foreign Assets Control ("OFAC") sanctions list, a move which could not have been taken without the Government regarding Defendant as susceptible to process in the US. The Government's determination on this issue must be treated as conclusive and cannot be reviewed by the courts, as it is a policy determination that is strictly within the purview of the political branches.

This Court should therefore grant Plaintiffs' motion to recognize Defendant as having already been served, or, in the alternative, order a nonburdensome form of substitute service.

I.      **Factual Background**

Plaintiffs Christian Friends of Israeli Communities and Christians for Israel USA are American Christian Zionist nonprofit organizations that lawfully support Israeli civilian communities and promote positive relations between Christians, Jews, and the Jewish State of Israel. Complaint, ECF No. 1, at ¶ 1. Their mission is driven by their sincere religious views, including their belief in Biblical prophecy related to Israel and the Jewish nation. *Id.* at ¶¶ 86, 95–96. Defendant Albanese is a private individual who previously served as the UN Special Rapporteur "on the situation of human rights in the Palestinian territories occupied since 1967" ("Special Rapporteur OPT"). *Id.* at ¶ 20. As of May 1, 2025, Defendant's mandate has expired and she no longer holds any position with the UN. *Id.* at ¶¶ 56–66.

In July 2025, Defendant publicly accused Plaintiffs of serious international crimes, including war crimes and crimes against humanity, and urged that Plaintiffs and their executives should face criminal liability, due to their Israel-related activities, which are tied to their religious values. *Id.* at 40–55. Defendant made these statements despite warnings from one Plaintiff and US Department of Justice ("DOJ") officials in May 2025 that such statements are false and would be defamatory if published. *Id.* at 35–37. At the time of the publication of the defamatory statements, Defendant's Special Rapporteur mandate had expired, and she was not acting pursuant to any official UN authority. *Id.* at 59–60. Plaintiffs thus brought this action to hold Defendant accountable for statements made outside the scope of any protected function and after the termination of any arguable immunity.

II.     **Procedural Background**

On September 8, 2025, Plaintiffs filed a complaint against Defendant for defamation, trade libel, and intentional interference with prospective economic advantage. On October 25, 2025,

3

Plaintiffs attempted to serve Defendant while she was in South Africa, in compliance with both the Federal Rules of Civil Procedure and South African law. On November 28, 2025, Plaintiffs filed a motion requesting that the court recognize this attempt as proper service, given that Defendant was provided actual knowledge of the proceedings against her, though she intentionally stymied Plaintiffs' ability to physically hand over the papers ("Motion"). ECF No. 13, ECF No. 21. On January 8, 2026, Plaintiffs filed a notice regarding Defendant's failure to oppose the Motion, as has been anticipated given that Defendant has repeatedly vowed to refuse to accept service of the Complaint in this matter. ECF No. 15, ECF. No. 23. On January 21, 2026, the magistrate judge ordered supplemental briefing on the issue of Defendant's putative immunity. ECF No. 16. On January 28, 2026, Chief Justice Brimmer was assigned to this case and referred the immunity issue for a recommendation from Magistrate Judge Dominguez Braswell. ECF No. 18.

## ARGUMENT

### I. Source and Scope of Immunity for UN Special Rapporteurs

UN Special Rapporteurs are recognized as enjoying functional immunity under parallel schemes, namely a treaty and a statute, both of which protect them from legal process exclusively for acts performed in their official capacity and neither of which is tied to them personally as individuals. They enjoy a lesser form of immunity available for some individuals who are not UN employees but are temporarily carrying out certain functions for the organization and are therefore accorded functional immunity within their roles as "experts on mission."

Pursuant to Art. 6, Section 22(b)[2] of the Convention on Privileges and Immunities of the United Nations ("CPIUN"), a self-executing treaty, special rapporteurs are UN "experts" and as such, are:

> . . . accorded such privileges and immunities as are necessary for the independent exercise of their functions during the period of their missions, . . .  In particular they shall be accorded: . . . *In respect of words spoken or written and acts done by them in the course of the performance of their mission, immunity from legal process of every kind* . . . .

Similarly, through the International Organizations Immunities Act ("IOIA"), Congress established that UN employees "shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their [official] functions as such representatives, officers, or employees except insofar as such immunity may be waived" by the United Nations. 22 USCA § 288d.

The immunity is broad, encompassing judicial, administrative, and executive process, including service, but applies only for actions taken within their official role with the UN.[3] *See Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 214 (2019) (explaining that the CPIUN and the IOIA are essentially coextensive, and that the immunity conferred by both is broad). Most critically, the fact that this broad immunity is subject to functional limitations is found in both the CPIUN and the IOIA. CPIUN Art. 6, Section 22(b) (indicating immunity is only for those acts or words taken "in

---

[2] The Court inquired as to the applicability of Convention on the Privileges and Immunities of the United Nations ("CPIUN") art. V, § 18(a). That provision applies to UN officials, whereas Special Rapporteurs are "experts" for purposes of the CPIUN. Manual of Operations of the Special Procedures of the Human Rights Council, Section D.2, ¶ 13.

[3] *See* MIRKA MOLDNER, *International Organizations or Institutions, Privileges and Immunities*, MAX PLANCK ENCYCLOPEDIAS OF INT'L L. 47–48 (May 2011), *available at* https://opil.ouplaw.com/display/10.1093/law:epil/9780199231690/law-9780199231690-e507.

5

the course of the performance of their mission"); 22 U.S.C. § 288d(b) (stating the UN employee has immunity "relating to acts performed by them in their official capacity and falling within their [official] functions").

### II. Defendant Is Not Protected by Immunity Under Any Theory

Given that Defendant's immunity could only arise from official acts taken as a special rapporteur for the UN, she is plainly unprotected under every conceivable theory. *First*, Defendant's mandate as Special Rapporteur OPT expired months before her complained-of conduct, rendering her unprotected by "expert" immunity at the time of her defamatory remarks. *Second*, even if Defendant's rapporteur appointment had not expired—which it had—her defamatory remarks fall far outside any "official conduct" that could reasonably be said to be within the scope of the mandate.

#### a. Defendant's Reappointment to Her Mandate was Invalid, and Therefore at All Relevant Times Defendant Was Not Protected by the Functional UN "Expert" Immunity

There is no colorable argument that Defendant is or was protected by UN expert immunity at any time relevant to the underlying claims in this case because Defendant has not been a special rapporteur since April 2025 and the conduct complained of occurred after her mandate expired. Complaint at ¶¶ 60–68. As described at length in the Complaint, Defendant was appointed a Special Rapporteur in 2022, but her mandate was not validly reappointed in 2025. *Id.* at ¶¶ 56–68. Specifically, the required procedure for reviewing challenges to a special rapporteur's reappointment due to that rapporteur's violation of the UN Code of Conduct were not followed. *Id.* at ¶¶ 56–66. The UN did not conduct the required investigation of the formal and informal

6

allegations of misconduct[4] made against Defendant prior to the purported extension of her mandate, *id.* at ¶ 61, which was done without an official vote and merely announced, again in direct contravention of UN rules of procedure. *Id.* at ¶¶ 62–65.

As asserted in the Complaint, the President of the UN Human Rights Council ("UNHRC"), which oversees the Special Rapporteur OPT mandate, was required by the UN procedural code to properly convey to UNHRC members the opposition to Defendant's reappointment "prior to the renewal of [her] office." *Id.* at ¶ 62. The UNHRC was obligated to review and investigate the information regarding Defendant's persistent, pervasive misconduct and unfitness for office, *id.* at ¶ 63, and Defendant was ineligible for automatic renewal due to the complaints made against her, *id.* at ¶ 64. In short, the UNHRC's procedures forbid automatic reappointment in the rare circumstance that objections to the reappointment have been made. *Id.* at ¶¶ 62–64. However, the procedures for considering the widespread opposition to reappointment of Defendant were not followed, no investigation conducted, no formal vote taken, and instead the supposed renewal of her mandate was merely announced. *Id.* at ¶¶ 63–66. The UNHRC has attempted to evade the defects in Defendant's reappointment and continue to treat her as a special rapporteur. However, the UNHRC cannot, by flouting its own rules, manufacture immunity in federal court.

Moreover, whatever the position of the UNHRC as to Defendant's immunity, federal courts must look to the position of the Executive Branch, not a UN agency. The US Government has made clear that it considers Defendant's so-called reappointment to be invalid and that she no

---

[4] Condemnations or letters opposing renewal of Defendant's mandate were issued by the US Mission to the UN, seven members of the US House Foreign Affairs Committee, ten members of the European Parliament, the Netherlands, Hungary, Argentina, Israel, as well as current or former parliamentarians or officials in France, Germany, Italy, and the United Kingdom. Complaint at ¶ 61.

longer holds any immunity. *Id.* at 69–75. The imposition of OFAC sanctions against Defendant was only possible because Defendant is *not* immune. Albanese was sanctioned pursuant to Executive Order ("EO") 14203, which imposed sanctions on the International Criminal Court ("ICC") for its "illegitimate and baseless actions targeting America,". In Section 1(a)(ii)(A) of the EO, the Government further announced:

> All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person, of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General to have directly engaged in any effort by the ICC to investigate, arrest, detain, or prosecute a protected person without consent of that person's country of nationality.

Pursuant to that provision, in July 2025, the US Department of State announced sanctions against Defendant, with her defamatory campaign against Plaintiffs and other entities specifically cited as a basis for this dramatic move. Secretary of State Marco Rubio stated at the time: "We will not tolerate these campaigns of political and economic warfare, which threaten our national interests and sovereignty." Complaint at ¶ 74.

The US does not, and indeed, could not impose OFAC sanctions on individuals who possess UN immunity. Sanctioning UN officials or experts would be incompatible with the functional immunity enjoyed by those individuals.[5] In fact, the US has *never* sanctioned a single *current* UN official or expert in UN history. In other instances where the executive branch has imposed sanctions, those EOs included express carveouts for immune individuals or entities. *See, e.g.*, 68 Fed. Reg. 14306, EO 13290, Confiscating and Vesting Certain Iraqi Property (Mar. 20,

---

[5]*See generally* Moldner, *supra* note 3.

8

2003) (providing exception to sanctions for "funds that are subject to" diplomatic immunity or "equivalent privileges and immunities"). A necessary inherent determination in the imposition of OFAC sanctions on Albanese, therefore, is an Executive recognition and policy determination that Albanese does not enjoy immunity from legal process.

The position of the US Government that Defendant no longer enjoys any immunity must be treated as conclusive by the Court. *Habyarimana v. Kagame*, 696 F.3d 1029, 1031 (10th Cir. 2012) (articulating that the court "defer[s]" to the US Government's position on immunity); *United States v. Kuznetsov*, 442 F. Supp. 2d 102, 106 (S.D.N.Y. 2006) ("A court's reliance on the State Department's certification when determining diplomatic immunity has a long history in this country's jurisprudence."); *US v. Coplon*, 88 F. Supp. 915, 921 (S.D.N.Y. 1950) (*Coplon II*) ("Diplomatic status is a political question and a matter of state; the finding of the Secretary of State must be accepted unquestioned.").

Indeed, the Government's position on the illegitimacy of Defendant's reappointment to her UN post, and her current lack of immunity, is a political determination related to foreign affairs and foreign policy that can solely be made by the Executive through its constitutionally-granted recognition power and is unreviewable by the courts. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10-13 (2015) (holding that the President alone enjoys "control over recognition decisions"). The recognition power afforded the president by the Constitution is absolute and exclusive, and empowers the president alone to determine whether to, for example, "recognize foreign states and governments," "receiv[e] an ambassador," and "negotiate treaties." *Id.* at 12-13. The determination of Defendant's status with the UN is thus one that is by its "very nature . . . executive" as it is "political, not judicial." *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948);

9

*United States v. Ortega*, 27 F. Cas. 359, 361 ("The constitution of the United States having vested in the president the power to receive ambassadors and other public ministers, has necessarily bestowed upon that branch of the government, not only the right, but ***the exclusive right,*** to judge of the credentials of the ministers so received; and so long as they continue to be recognized and treated ***by the president*** as ministers, the other branches of the government are bound to consider them as such.") (C.C.E.D. Pa. 1825) (emphasis added); *US v. Coplon*, 84 F. Supp. 472, 475 (S.D.N.Y. 1949) (*Coplon I*) ("The dispositive fact is that the State Department has declared . . . that defendant does not enjoy diplomatic status. That is a political decision which the courts do not review"); *see also Cogswell v. United States Senate*, No. CIV08CV01929REBMEH, 2009 WL 529243, at *7 (D. Colo. Mar. 2, 2009), *aff'd sub nom. Cogswell v. United States*, 353 F. App'x 175 (10th Cir. 2009) (declining to review lawsuits challenging judicial appointment as nonjusticiable political question, which if the court reviewed would be "the utmost expression of a lack of the respect due coordinate branches of government" (internal quotations omitted)); *Schroder v. Bush*, 263 F.3d 1169, 1176 (10th Cir. 2001) (explaining that policy matters are not the court's purview as it would require the courts to "invade inappropriately the provinces of both the Legislative and Executive Branches").

Therefore, any and all of Defendant's conduct after May 1, 2025, which is the subject of the Complaint, could not be protected by the functional immunity enjoyed by special rapporteurs as none of the challenged conduct occurred while Defendant bore the title of a legitimate and duly recognized UN "expert." *Coplon I*, 84 F. Supp. at 475 (finding that a former diplomat enjoyed no immunity for actions taken after the expiry of his diplomatic appointment). Defendant's

defamatory statements made about Plaintiffs—which is the conduct underlying every cause of action in the complaint—therefore fall outside of UN immunity protections.[6]

### b. Defendants Acts are Not Protected as They Fall Outside of Her Erstwhile Mandate

Even if Defendant had enjoyed immunity at the time the underlying acts took place, which she categorically did not, she has no immunity for *ultra vires* acts. Defendant's former mandate as Special Rapporteur OPT does not include defamation of Plaintiffs, American Christian charities. Complaint at ¶¶ 40–47. Nor does it include calling for national and international repercussions, including criminal charges, for Plaintiffs' charitable work in support of their religious beliefs. *Id.* at ¶¶ 48–55. Expert immunity is granted to support the interests of the UN as an institution and to protect the individuals carrying out that work in their official capacity; it does not confer a personal benefit to support the pursuit of Defendant's private agenda, which many countries, including the US, have denounced as reprehensibly antisemitic. *Id.* at ¶¶ 17–25, 29.

The position of the Special Rapporteur OPT was created in 1993, and the mandate-holder tasked with the following duties:

---

[6] The Court may request the Government submit a formal statement regarding its position on Defendant's immunity. *Universal Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 581 (1946) ("[A] federal court can always call on law officers of the United States to serve as amici."); *Faubus v. United States*, 254 F.2d 797, 805 (8th Cir. 1958) ("It has, we think, always in the past been customary for a federal District Court to call upon the law officers of the United States for aid and advice" to effectuate the proper outcome when government interests are implicated); *see also* Fed. R. Civ. P. 24 ("[T]he court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on (a) a statute or executive order administered by the officer or agency; or (b) any regulation, order, requirement, or agreement issued or made under the statute or executive order.").

> (a) To investigate Israel's violations of the principles and bases of international law, international humanitarian law and the Geneva Convention relative to the Protection of Civilian Persons in Time of War, of 12 August 1949, in the Palestinian territories occupied by Israel since 1967;
>
> (b) To receive communications, to hear witnesses, and to use such modalities of procedure as he may deem necessary for his mandate;
>
> (c) To report, with his conclusions and recommendations, to the Commission on Human Rights at its future sessions, until the end of the Israeli occupation of those territories.
>
> Comm'n on Hum. Rts. Res. 1993/2, para. 4.[7]

Nowhere in the mandate's job description does it include waging personal vendettas against Jews, supporters of Jews, or entities whose business models or faith practices the rapporteur finds personally distasteful or even morally abhorrent—which is precisely what Defendant has done. Complaint at ¶¶ 31–55. In *United States v. Enger*, 472 F. Supp. 490, 502 (D.N.J. 1978), *overruled on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983), the District Court of New Jersey held that UN officials charged with espionage were not entitled to immunity under the IOIA because espionage "is, of course, not one of the functions performed in the defendants' official capacities with the United Nations." So, too, here, defaming and threatening Plaintiffs on the basis of their ardently held religious views can in no way be construed as part of the mandate of the Special Rapporteur OPT. *Mpiliris v. Hellenic Lines, Ltd.*, 323 F. Supp. 865, 882–83 (S.D. Tex. 1969), aff'd, 440 F.2d 1163 (5th Cir. 1971) ("Had Callimanopoulos' activities in the United States been restricted, at least substantially, to representing his government in his official capacity before the United Nations, defendants' arguments would, it seems, be entitled to more serious consideration.

---

[7] The creation of this position to begin with was opposed by the United States. Voting Record for Draft Resolution E/CN.4/1993/L.5 (Feb. 19. 1993), available at https://searchlibrary.ohchr.org/record/22758.

But his activities in this country have certainly not been so restricted."); *U.S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 431 (S.D.N.Y. 1963) ("Conspiracy to commit sabotage against the Government of the United States is not a function of any mission or member of a mission to the United Nations. Accordingly, the Court holds that the petitioner does not enjoy [] immunity . . . "); *United States v. Melekh*, 193 F. Supp. 586, 598–99 (D.C. Ill. 1961) (no immunity for UN employees charged with espionage); *United States v. Melekh*, 190 F. Supp. 67, 79–80 (S.D.N.Y. 1960) (holding that the defendant, a Soviet employee of the UN, had no immunity for the alleged criminal acts as said conduct did not "gr[o]w out of" nor were they "incidental to his official activities as a United Nations officer or employee. If the charged acts had been ancillary to his United Nations functions, the defendant would have received complete immunity under the [IOIA]"); *cf. United States v. Dumeisi*, 424 F.3d 566, 580–81 (7th Cir. 2005) ("[I]f there was a real agreement between [defendant] and [foreign intelligence services] for [defendant] to act in the United States as an agent of Iraq without notifying the Attorney General, the diplomatic titles held by those [] agents cannot save [defendant] from being prosecuted for the conspiracy.").

Indeed, the illegitimacy of Defendant's defamatory attack on Plaintiffs as a part of the Special Rapporteur OPT mandate was made clear by Leo Terrell, head of the DOJ Task Force to Combat Antisemitism and Senior Counsel to the Assistant Attorney General for Civil Rights, who cautioned Defendant in a May 19, 2025 missive that publishing her statements would be actional defamation and a "flagrant abuse" of her standing on the global stage. Complaint at ¶ 37.

Because a defamatory witch-hunt motivated by nothing but Defendant's anti-Jewish animus cannot be construed as falling within the remit of Defendant's one-time mandate as Special Rapporteur OPT, the complained-of conduct cannot be immunized by CPIUN or IOIA functional

13

immunity. Complaint at ¶ 3, 31–55. This is true even if the court were to conclude—incorrectly, as Plaintiffs have argued—that the expiration of Defendant's mandate does not in and of itself render her actions unprotected.

### III. Immunity is a Defense that Cannot be Raised *Sua Sponte*

Finally, even if Defendant had immunity, which she does not, the functional immunity UN "experts" enjoy is an affirmative defense that must be raised, rather than a jurisdictional requirement that courts may address *sua sponte*. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"). Unlike subject matter jurisdiction which can never be waived, *see* Fed. R. Civ. P. 12(h)(3), a UN official or expert's immunity can be expressly waived or impliedly forfeited through non-assertion. *Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) ("Moreover, this Court has long held that both qualified and absolute immunity are affirmative defenses that must be pleaded."); *see, e.g.*, *United States v. Bahel*, 662 F.3d 610, 625–26 (2d Cir. 2011); *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) (immunity "does not implicate federal subject matter jurisdiction in the ordinary sense" and "should be treated as an affirmative defense[.]"); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) ("[S]overeign immunity is akin to an affirmative defense, which the defendant bears the burden of so demonstrating. In so concluding, we join every other court of appeals that has addressed the issue."); 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1271 (4th ed. Sept. 2025 update) (compiling "various forms of immunity" that have been held to be affirmative defenses). Therefore, because the question of Defendant's immunity is one that only Defendant can assert and that Defendant would bear the burden to prove,

any consideration by the court of Defendant's purported immunity is improper at this stage in the proceedings where Defendant has yet to even appear.

Dated: February 26, 2026

                                            Respectfully Submitted,
                                            NATIONAL JEWISH ADVOCACY
                                            CENTER (NJAC)

                                            */s/ Rachel Sebbag*
                                            Rachel Sebbag
                                            NATIONAL JEWISH ADVOCACY
                                            CENTER (NJAC)
                                            3 Times Square
                                            Suite 512
                                            New York, NY 10036-6564
                                            rachel@njaclaw.org
                                            332.278.1100

                                            *Attorneys for Plaintiffs*

**Certificate of Service**

I certify that on February 26, 2026, I electronically filed the foregoing supplemental brief by CM/ECF, which will send notification of such filing to all counsel of record in this matter.

Respectfully Submitted,

NATIONAL JEWISH
ADVOCACY CENTER, INC

/s/ *Rachel Sebbag*
Rachel Sebbag
1954 Airport Road Suite 1196
Atlanta, GA 30341
rachel@njaclaw.org
332.278.1100

*Attorneys for Plaintiff*