IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–02805–PAB

CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, and
CHRISTIANS FOR ISRAEL USA,

      Plaintiffs,

v.

FRANCESCA PAOLA ALBANESE,

      Defendant.

---

**ORDER**

---

This matter is before the Court on Plaintiffs' Motion to Request Recognition of Effective Service or in the Alternative, Request for Substitute Service. (["Motion"], Doc. No. 13.)[1] At the Court's request, Plaintiffs also filed a supplemental brief (the "Supplemental Brief") addressing the Court's questions about any immunity that might impact subject matter jurisdiction.[2] (*See* Doc. Nos. 16; 25.) Defendant has not responded to the Motion nor otherwise appeared in this action. After review, the Motion is **GRANTED in part and DENIED in part**.

**BACKGROUND**

---

[1] Plaintiffs have since filed an amended motion which corrected one of the Plaintiff's names in the caption. (Doc. No. 22-1.) The substance of the Motion and amended motion are identical.

[2] Subsequent to the Court's request for supplemental briefing, Plaintiffs declined to consent to the jurisdiction of a magistrate judge and this case was reassigned to Judge Brimmer as the presiding judge. (*See* Doc. Nos. 17; 18.) Judge Brimmer referred the instant Motion to the undersigned. (*See* Doc. No. 19.)

Plaintiffs initiated this defamation suit in September 2025. (Doc. No. 1.) At a high level, Plaintiffs allege that Defendant, the United Nations ("UN") Special Rapporteur "on the situation of human rights in the Palestinian territories occupied since 1967," issued a June 30, 2025, report titled, "From Economy of Occupation to Economy of Genocide," that made "false, derogatory, malicious allegations and improper threats against Plaintiffs." (*Id.* at ¶¶ 11, 23.)

Plaintiffs have not personally served Defendant. Plaintiffs detail their efforts in the Motion, saying they attempted to serve Defendant after she spoke at a conference in Johannesburg, South Africa, on October 25, 2025.[3] (Doc. No. 13 at 3–6.) Plaintiffs retained South African counsel, Justin Berman, and received authorization to serve Defendant from the Director-General of the South African Department of Justice and Constitutional Development. (*Id.* at 3 (citing Doc. No. 13-1 at 1–3, 4–5); *see* Doc. No. 13-1 at 6–18 (the affidavit of Mr. Berman).) Mr. Berman and a local sheriff then attempted to serve Defendant after her speech. (Doc. No. 13 at 3–4; *see generally* Doc. No. 13-1.) Mr. Berman states that he and the sheriff were taken to Defendant's private suite at the venue, and assured Defendant would be returning after her lecture. (Doc. No. 13-1 at 12–13.) However, according to Mr. Berman, Defendant was eventually made aware of the effort to serve her, had images of the process paperwork sent to her electronically, and did not accept service. (*Id.* at 14–15; *see id.* (stating that Mr. Berman observed images of the complaint being transmitted to Defendant via WhatsApp, that security removed Defendant's belongings from the suite, and that the general counsel to the event's

---

[3] Plaintiffs say that before attempting to serve Defendant, on September 29, 2025, they mailed and emailed Defendant service waiver forms, but Defendant has not responded. (Doc. No. 13 at n. 2.)

organizer informed Mr. Berman that UN counsel advised Defendant not to accept service).) Mr. Berman states that Defendant refused to return to the suite and, through intermediaries, explicitly conveyed that she would not accept service. (*Id.* at 15–16.) Additionally, Plaintiffs rely on social media posts to argue that Defendant must have been aware of the service attempt.[4] (*Id.* at 6 n.5.)

Plaintiffs move for a Court order that deems their service efforts sufficient, or alternatively, allows service by email and social media, under Federal Rule of Civil Procedure 4(f)(3).

## ANALYSIS

### I.    The Court's Subject Matter Jurisdiction

"Article 2 of the Convention on the Privileges and Immunities of the United Nations ("U.N. Convention") acceded to by the United States in 1970, provides, in relevant part: 'The United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity.'" *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 371 (S.D.N.Y. 1996) (quoting U.N. Convention, art. 2, § 2, 21 U.S.T. at 1422) (internal citation omitted). Further, "[w]ith respect to officials of the United Nations [the U.N. Convention] provides, in relevant part: 'Officials of the United Nations shall: (a) be immune from **legal process** in respect of

---

[4] Specifically, Plaintiffs reference an X post from an unknown account that includes an image of the service authorization document obtained by Plaintiffs, and discusses Plaintiffs' attempt to serve Defendant, urging Defendant to acknowledge service and appear in this action. They further reference a responsive post from Defendant that says: "The [South African] government corrected the matter immediately. They even issued an apology." *See* https://x.com/FranceskAlbs/status/1982904671959429507.

words spoken or written and all acts performed by them in their official capacity[.]'" *Id.* (quoting U.N. Convention, art. 5, § 18, 21 U.S.T. at 1432) (emphasis added).

At least one court has concluded that UN official immunity extends to maintenance of the suit, and, by extension, to service of process. *See id.* at 373 (dismissing claims against a UN official (who had not been served) *sua sponte* "for lack of subject matter jurisdiction" because the official was "immune from being sued"); *see also Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) ("[C]urrent diplomatic envoys enjoy absolute immunity from civil and criminal process[.]").

Because this analysis could impact jurisdiction, the Court directed Plaintiffs to file the Supplemental Brief. (Doc. No. 16.) In their brief, Plaintiffs advance several arguments in opposition to immunity: (1) that Defendant's reappointment as a Special Rapporteur was "invalid," (2) that the United States government has sanctioned Defendant and therefore does not consider her to have UN immunity, (3) that the statements at issue were not official acts and therefore any immunity afforded to Defendant is not triggered here, and that the Court may not raise the issue *sua sponte*. (Doc. No. 25 at 6–14.)

The Court has considered each argument but declines to issue a ruling or recommendation on the immunity question, at this time. Contrary to Plaintiffs' contention, questions of subject matter jurisdiction are indeed appropriate for *sua sponte* consideration. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the

litigation.'" (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 514 (2006).) However, Plaintiffs' arguments raise issues that will benefit from responsive arguments and potentially a more developed record. *See Askir*, 933 F. Supp. at 370 (noting that though the U.N. official defendant had not been served, U.N. counsel had "submitted papers ... asserting absolute immunity"). Thus, for purposes of this Motion, the Court will presume, without deciding, that immunity does not bar service. Jurisdictional issues, if any, will be resolved at a later date.

## II.    Plaintiffs' Request to Deem Defendant Served

Plaintiffs ask the Court to deem Defendant effectively served because Defendant has actual notice of the lawsuit. The Court denies that request.

A defendant's actual notice of a lawsuit, when combined with the plaintiff's substantial compliance with service rules and the defendant's apparent evasion, *can* support a finding of effective service. *See Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 944 (10th Cir. 1987) (noting that a finding of effective service required "substantial, as opposed to strict compliance with the notice statutes," and ultimately finding the defendant had been served in light of his "egregious conduct in attempting to avoid service"); *Kitchens v. Bryan County Nat'l. Bank,* 825 F.2d 248, 256 (10th Cir. 1987) ("'[T]he federal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually receives notice.'" (quoting Wright and Miller, 4 *Federal Rules and Procedure,* § 1074 at 295)). However, generally, such findings are made after the defendant has thwarted plaintiff's attempts on multiple occasions. *See, e.g.*, *Grady v. Swisher*, 2014 WL 3562794, at *6 (D. Colo. July 18, 2014). The more attempts, the easier it is for a court to find that: (a) plaintiff substantially complied with its service obligation, (b) defendant is evading, and (c) defendant has actual notice

of the lawsuit. Requiring multiple attempts seems all-the-more important in a case involving a foreign defendant who may be unfamiliar with U.S. service requirements and may be less likely to understand the legal obligations imposed by a U.S. court.

Here, there is some evidence that Defendant is aware of this suit and potentially evading service, but Plaintiffs have only made one service attempt, and the Court finds it insufficient to support a finding of effective service.

### III.    Plaintiffs' Request for Substitute Service

As an alternative to a finding of effective service, Plaintiffs request leave to effect substitute service by email and social media. (Doc. No. 13 at 7–8.) Rule 4(f) of the Federal Rules of Civil Procedure permits a court to direct service on an individual in a foreign country in one of three ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice ... [,] or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"Rule 4(f) does not create a hierarchy of preferred methods of service, and parties are not required to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3)." *DP Creations, LLC v. Reborn Baby Mart*, 2021 WL 11585915, at *7 (D. Utah Nov. 22, 2021). Service of process pursuant to Rule 4(f)(3) "is neither a last resort nor extraordinary relief." *Garb Oil & Power Corp. v. Titan Int'l Secs., Inc.*, 2018 WL 4401737, at *1 (D. Utah Sept. 14,

2018) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). However, "[p]rior to granting a motion to allow alternate service under Rule 4(f)(3), 'the court may require that plaintiff show that he made reasonable efforts to serve the defendant and that the court's intervention will avoid further unduly burdensome or futile efforts at service.'" *Whaleco, Inc. v. Izquierdo,* 2023 WL 9051077, at *3 (D. Colo. Dec. 29, 2023) (quoting *Blumedia Inc. v. Sordid Ones BV*, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011)).

Here, Plaintiffs allege that Defendant is a permanent resident of Tunisia. (Doc. No. 1 at ¶¶ 9, 16.) Tunisia is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 ("Hague Service Convention"). 20 U.S.T. 361; *see also The Service Convention Enters Into Force for Tunisia*, HCCH, www.hcch.net/pt/news-archive/details/?varevent=589&utm (last visited Jan. 1, 2026). Tunisia has not declared any opposition to Article 10 of the Hague Service Convention, which states, in part: "Provided the State of destination does not object, the present Convention shall not interfere with a) the freedom to send judicial documents, by postal channels, directly to persons abroad[.]" Hague Service Convention, 20 U.S.T. 361; *see also* Declaration/Reservation/Notification, HCCH, www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1380&disp+resdn (last visited Jan. 12, 2026) (noting Tunisia issued objections, reservations, and notifications to Articles 8, 15, and 16, but not 10, upon signing the Hague Service Convention). Because Tunisia has not objected to Article 10, and because the Hague Service Convention does not otherwise expressly prohibit service by email or social media, Plaintiffs' request for service on Defendant via email and social media pursuant to Rule 4(f)(3) is not prohibited by international agreement. *See QSR Int'l L.D.C. v. QZCR S.R.L.*, 2025

WL 1993699, at *1 (D. Colo. July 17, 2025); *see also Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, 2021 WL 915662, at *3–4 (E.D. Pa. Mar. 10, 2021) (collecting cases and concluding that service by email is permissible even when receiving country objects to Article 10 because "postal channels" does not include email and allowing service by email under Fed. R. Civ. P. 4(f)(3)).

"When a requested alternative method of service is not prohibited by international agreement, whether to permit the method 'is a matter of discretion' for the Court." *Id.* at *2 (quoting *Malone v. Highway Star Logistics, Inc*., 2009 WL 2139857, at *2 (D. Colo. July 13, 2009)). Under the circumstances, Plaintiffs' request for substitute service is appropriate. First, Plaintiffs have undertaken significant efforts to serve Defendant in South Africa and the Court finds those efforts reasonable under the circumstances. Second, additional in-person efforts will be burdensome and may be futile in light of possible evasion. Third, the Court is satisfied that Plaintiffs' proposed methods "comport[ ] with constitutional notions of due process." *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (noting that due process requires the method of service to be "reasonably calculated, under all the circumstances" to give notice to the defendants "and afford them an opportunity to present their objections."). Defendant appears to have notice of this suit, and is likely aware of messages to her UN email address: hrc-sr-opt@un.org, (Doc. No. 13 at 8 (saying Defendant has previously communicated with Plaintiffs using this account)), as well as messages to her X social media account, @FranceskAlbs. (*Id.* at 6 n.5, 8 n. 6.)

## CONCLUSION

8

Plaintiffs' Motion to Request Recognition of Effective Service or in the Alternative, Request for Substitute Service (Doc. No. 13) is **GRANTED in part** and **DENIED in part**. Pursuant to Fed. R. Civ. P. 4(f)(3), substitute service is authorized. Plaintiffs must send Defendant a copy of the Summons, Complaint, and this Order via email (hrc-sr-opt@un.org) and via the @FranceskAlbs account on the X social media platform. Such service shall be deemed effective as of the date on which the materials are transmitted. Plaintiffs shall provide proof of service within three days of completion.

Dated this 14th day of May, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge