**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, CHRISTIANS FOR ISRAEL USA,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCESCA PAOLA ALBANESE,<br><br>Defendant. | Case No. 1:25-cv-2805 (PAB) (MDB)<br><br>**<u>Oral Argument Requested</u>** |

## <u>[PROPOSED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR UNITED NATIONS' MOTION TO DISMISS</u>

Proposed Intervenor the United Nations ("<u>UN</u>") moves to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(5) for lack of subject matter and personal jurisdiction and invalid service of process on the grounds that Defendant Francesca Paola Albanese is entitled to immunity under the Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1422 ("<u>CPIUN</u>").

## <u>PRELIMINARY STATEMENT</u>

Defendant Francesca Paola Albanese is a Special Rapporteur appointed in 2022 by the UN Human Rights Council ("<u>UNHRC</u>") with a mandate to assess the situation of human rights in the Palestinian territories occupied by Israel since 1967 and to report her conclusions and recommendations to the UN. As a Special Rapporteur, Ms. Albanese is entitled to immunity from all legal process with respect to "words spoken or written and acts done" in the performance of her mandate under Section 22 of the CPIUN. Plaintiffs are nevertheless suing Ms. Albanese for defamation for the "words . . . written" in her report to the UN – namely, a sentence in the report

alleging that Plaintiffs have provided monetary support to illegal settlements in occupied Palestinian territory. Ms. Albanese is immune from such claims under the plain text of the CPIUN and therefore this case must be dismissed with prejudice for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

### A. The United Nations and the Parties

The UN is an international organization founded in 1945 for the purposes of maintaining international peace and security, protecting human rights, and upholding international law. *See* UN Charter pmbl. Defendant Ms. Albanese currently holds the mandate for the Special Rapporteur on the Situation of Human Rights in the Palestinian Territory Occupied Since 1967 ("Special Rapporteur for the Occupied Palestinian Territory") appointed by the UNHRC. Ms. Albanese was appointed to hold the mandate of the Special Rapporteur for the Occupied Palestinian Territory at the 49th session of the UNHRC. The President of the UNHRC submitted Ms. Albanese's proposed appointment to Member States on February 22, 2022, and her appointment was approved by the UNHRC on April 1, 2022.[1] Under UNHRC regulations, "[a] mandate-holder's tenure in a given function, whether a thematic or country mandate, will be no longer than six years (two terms of three years for thematic mandate-holders)." *See* UNHRC Res. 5/1, Annex, ¶ 45 (June 18, 2007). Her term as the mandate holder is thus scheduled to expire at the end of March 2028.[2]

Ms. Albanese is a citizen of Italy and a resident of Tunisia. Compl. ¶ 16. Plaintiff Christian Friends of Israeli Communities ("CFOIC") is a Colorado non-profit organization. *Id.* ¶ 14.

---

[1] Appointments at the 49th session of the Human Rights Council (28 February to 1 April 2022), https://www.ohchr.org/en/hr-bodies/hrc/sp/hrc49.

[2] *See* Current and Former Mandate Holders (Existing Mandates): Valid as of May 1, 2026, https://www.ohchr.org/en/special-procedures-human-rights-council/current-and-former-mandate-holders-existing-mandates.

Plaintiff Christians for Israel USA ("C4I USA") is a Virginia non-profit corporation and an affiliate of a Dutch non-profit, Christians for Israel ("C4I"). *Id.* ¶ 15.

### B. Allegations in the Complaint

On September 8, 2025, Plaintiffs filed their Complaint asserting defamation, trade libel, and tortious interference claims against Ms. Albanese based on statements contained in a report she authored in the performance of her mandate, which was published by the UNHRC for its consideration: Francesca Albanese (Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967), *From Economy of Occupation to Economy of Genocide*, UN Doc. A/HRC/59/23 (July 2, 2025) (the "Report").[3]

The Report contains the following statement regarding C4I and Plaintiff CFOIC:

> Faith-based charities have also become key financial enablers of illegal projects, including in the occupied Palestinian territory, often receiving tax deductions abroad despite strict regulatory charitable frameworks . . . . The United States-based Christian Friends of Israeli Communities, Dutch Christians for Israel and global affiliates, sent over $12.25 million in 2023 to various projects that support colonies, including some that train extremist settlers.

*Id.* ¶ 81. Beyond the above-quoted paragraph, there are no other references to Plaintiffs or any of their affiliates in the Report. There are also no references to Plaintiff C4I USA in the Report.

At the end of the Report, Ms. Albanese makes a series of "Recommendations" urging corporate entities in general to cease all activities linked or contributing to human rights violations in Palestine and urging the UN, its Members States and others to hold accountable corporate entities that persist in such activities. The Recommendations do not specifically reference Plaintiffs or any other corporate entities. Report, ¶¶ 94-98. Plaintiffs claim that the Report caused them "reputational harm and mental anguish." Compl. ¶ 82.

---

[3] Available at https://docs.un.org/en/A/HRC/59/23.

**C. Procedural History**

On November 28, 2025, Plaintiffs filed a "Motion to Request Recognition of Effective Service" in which Plaintiffs assert that they have engaged in "wild goose chase" to serve Ms. Albanese. ECF No. 13 at 2. Plaintiffs allegedly hired a South African attorney to attempt to personally serve Ms. Albanese while she was visiting South Africa for a conference, which was unsuccessful. *Id.* at 2-5. Plaintiffs nevertheless asked this Court for *ex parte* recognition of the validity of their failed attempt to personally serve Ms. Albanese. *Id.* at 5-7. Plaintiffs alternatively asked the Court to authorize substitute service on Ms. Albanese via email and social media. *Id.* at 7. Plaintiffs' motion did not even mention the CPIUN.

On January 21, 2026, this Court *sua sponte* ordered Plaintiffs to file a supplemental brief to address the issue of Ms. Albanese's immunity under the CPIUN. ECF No. 16. On February 26, 2026, Plaintiffs filed a supplemental brief arguing that Ms. Albanese was not entitled to immunity under the CPIUN. ECF No. 25.

On May 14, 2026, this Court issued an order denying Plaintiffs' request to recognize their failed attempt at personal service as effective service of process but nevertheless granting their alternative request to authorize substitute service via email and social media. ECF No. 26. While the Court correctly held that immunity under the CPIUN is an issue of subject matter jurisdiction, the Court found that responsive briefing on the immunity issue would be beneficial. *Id.* at 3-5. In authorizing substitute service, the Court assumed without deciding "that immunity does not bar service" and stated that jurisdictional issues could be "resolved at a later date." *Id.* at 5. Plaintiffs purported to effect service on Ms. Albanese via email and the social media platform X on May 15, 2026.

## ARGUMENT

### I. Plaintiffs Cannot Satisfy Their Burden of Establishing Subject Matter Jurisdiction

Courts lack subject matter jurisdiction where, as here, a defendant is entitled to immunity under the CPIUN. *See*, *e.g.*, *Smith v. Bender*, No. 07-cv-01924, 2008 U.S. Dist. LEXIS 58395, at *20 (D. Colo. July 11, 2008) (citing *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10 Cir. 2006)); *Georges v. UN*, 834 F.3d 88, 98 (2d Cir. 2016). Plaintiffs have the burden of abrogating immunity under the CPIUN and establishing subject matter jurisdiction. *See Est. of Siman Tov v. United Nations Relief & Works Agency*, 807 F. Supp. 3d 208, 219-20 (S.D.N.Y. 2025); *Laventure v. UN*, 279 F. Supp. 3d 394, 398 (E.D.N.Y. 2017), *aff'd*, 746 F. App'x 80 (2d Cir. 2018); *Georges v. UN*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016); *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013), *aff'd*, 618 F. App'x 3 (D.C. Cir. 2015); *see also Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019). Plaintiffs cannot meet their burden here.[4]

### II. Ms. Albanese Is Entitled to Immunity under the CPIUN and Therefore This Case Must Be Dismissed for Lack of Subject Matter Jurisdiction

Article II of the CPIUN states that the UN "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." CPIUN art. II, § 2; *see also* UN Charter art. 105, ¶ 1. Article II of the CPIUN confers absolute immunity on the UN. *See Brzak v. UN*, 597 F.3d 107, 111-12 (2d Cir.2010). Article VI of the CPIUN confers immunity on experts on mission for the UN. Section 22 of the CPIUN states:

---

[4] While Plaintiffs argued that immunity is an affirmative defense that must be pled and proven, this Court correctly rejected that argument. ECF No. 26 at 3-5. Immunity under the CPIUN is a question of subject matter jurisdiction and is not an affirmative defense. *See Georges*, 834 F.3d at 98; *see also United States v. Miller*, 604 U.S. 518, 527 (2025) ("immunity is jurisdictional in nature and . . . [w]aivers of sovereign immunity function simply as 'prerequisite[s] for jurisdiction'") (cleaned up).

> Experts . . . performing missions for the United Nations shall be accorded such privileges and immunities as are necessary for the independent exercise of their functions during the period of their missions, including the time spent on journeys in connection with their missions. In particular, **they shall be accorded . . . [i]n respect of words spoken or written and acts done by them in the course of the performance of their mission, immunity from legal process of every kind**. This immunity from legal process shall continue to be accorded notwithstanding that the persons concerned are no longer employed on missions for the United Nations.

CPIUN art. VI, § 22(b) (emphasis added). Section 23 of the CPIUN makes clear that the privileges and immunities accorded to UN experts are granted in the interests of the UN itself and can only be waived by the UN Secretary-General. *Id.* § 23. The "CPIUN is a self-executing treaty" that has been ratified by the U.S., and its provisions are "binding on American courts." *Brzak*, 597 F.3d at 113.

Special Rapporteurs, such as Ms. Albanese, are "experts on mission" for the purposes of the CPIUN. *See* Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights, Advisory Opinion, 1999 I.C.J. Rep. 62, ¶ 46 (Apr. 29) ("*Immunity from Legal Process of a Special Rapporteur*"); Manual of Operations of the Special Procedures of the Human Rights Council, ¶ 13 (August 11, 2008) (the "UNHRC Manual").[5] It is undisputed that Ms. Albanese was appointed as Special Rapporteur for the Occupied Palestinian Territory "and in that capacity, she was entitled functional immunity as a UN 'expert' for acts taken within her mandate." ECF No. 25 at 2. Nevertheless, Plaintiffs argue that Ms. Albanese's immunity should be abrogated because either the Report was outside of her mandate as Special Rapporteur for the Occupied Palestinian Territory, her mandate had expired or the U.S. stripped

[5] Available at: https://www.ohchr.org/en/documents/procedural-documents/manual-operations-special-procedures-human-rights-council.

her of immunity by imposing sanctions on her. *See id.* at 1-2. These arguments are meritless and must be rejected.

**A. Ms. Albanese's Alleged Conduct Relates to the Performance of Her Mandate and Thus She Is Entitled to Immunity under the CPIUN**

The Secretary-General has determined that Ms. Albanese is entitled to immunity under Article VI, Section 22(b) of the CPIUN as the allegedly defamatory statements in the Report constitute "words spoke or written" in the performance of her mandate as the Special Rapporteur for the Occupied Palestinian Territory. The Secretary-General has not waived Ms. Albanese's immunity. Rather, the Secretary-General has confirmed and asserted her immunity, including through intervention in this case. *See* Ex. A, Letter from UN Legal Counsel to U.S. Representative to the UN, dated Oct. 3, 2025. Plaintiffs do not, and cannot, offer any basis for challenging the Secretary-General's determination of immunity.

The Secretary-General determines whether a UN expert's actions were undertaken in the performance of their mission under the CPIUN. *See Immunity from Legal Process of a Special Rapporteur*, ¶¶ 50-52, 60. This flows from Section 23 of the CPIUN, which states that the immunity accorded to experts under Section 22 is granted "in the interests of the United Nations and not for the personal benefit of the individuals themselves" and that only the Secretary-General of the UN may waive the immunity of an expert on mission. CPIUN art. VI, §§ 22-23.

The ICJ's advisory opinion in *Immunity from Legal Process of a Special Rapporteur* is directly on point. That case involved a Special Rapporteur mandated to investigate and report on the independence of judges and lawyers. *Id.* ¶ 1. The Special Rapporteur was sued for defamation in Malaysia based on statements made to the media and in reports to the UN that certain commercial entities were able to manipulate the Malaysian justice system. *Id.* ¶¶ 12-14. Acting on behalf of the Secretary-General, the UN Legal Counsel asserted the immunity of the Special

Rapporteur. *Id.* ¶¶ 6-9. The ICJ held that the Special Rapporteur was entitled to immunity from such lawsuits under Section 22(b). It explained that the Secretary-General correctly determined that the Special Rapporteur's allegedly defamatory statements to the media and in his reports to the UN were "words spoken or written" within the scope of his mandate. *See id.* ¶¶ 52-55. The ICJ further held that "the Secretary-General, as the chief administrative officer of the Organization, has the primary responsibility to safeguard the interests of the Organization; to that end, it is up to him to assess whether its agents acted within the scope of their functions." *Id.* ¶ 60.

Plaintiffs do not, and cannot, offer any plausible – much less compelling – basis to conclude that Ms. Albanese's Report was outside the scope of her mandate as Special Rapporteur for the Occupied Palestinian Territory. Nor has the UNHRC itself, to which the Report was submitted, suggested that the Report was, in any way, outside her mandate. That mandate was established in 1993 pursuant to Commission on Human Rights Res. E/CN.4/RES/1993/2 (Feb. 19, 1993), which expressly "[c]ondemns the policies and practices of Israel, which violate the human rights of the Palestinian people in the Palestinian territory occupied by Israel with military force, including Jerusalem, and, in particular, the . . . establishment of Jewish settlements in the occupied Palestinian territory." *Id.* ¶ 1. It further provides for the appointment of a Special Rapporteur with a mandate "[t]o investigate Israel's violations" of international law "in the Palestinian territories occupied by Israel" and to report their conclusions and recommendations to the UN. *Id.* ¶ 4. That is precisely what Ms. Albanese allegedly did here. She "investigate[d] Israel's violations" of human rights laws and issued the Report with her conclusions and recommendations to the UNHRC. The sole sentence in the Report concerning any Plaintiff states: "Christian Friends of Israeli Communities, Dutch Christians for Israel and global affiliates, sent over $12.25 million in 2023 to various projects that support colonies, including some that train extremist settlers."

Report, ¶ 81. That statement and the Report in general clearly fall within Ms. Albanese's mandate to investigate and report on human rights violations in occupied Palestinian territories.

While Plaintiffs assert that Ms. Albanese should not be accorded immunity because her alleged conduct was motivated by a wrongful animus and did not comply with the Code of Conduct applicable to Special Procedures mandate holders of the UNHRC, such as Ms. Albanese (Compl. ¶¶ 11, 59; ECF No. 25 at 12-13), immunity cannot be abrogated simply because the defendant is alleged to have engaged in wrongful conduct – no matter how serious the accusations may be. *See Federal Republic of Germany v. Philipp,* 592 U.S. 169, 182-84 (2021); *Saudi Arabia v. Nelson*, 507 U.S. 349, 361-63 (1993); *Matar v. Dichter*, 563 F.3d 9, 14-15 (2d Cir. 2009); *Tachiona v. United States*, 386 F.3d 205, 220 (2d Cir. 2004); *Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004); *see also* Jurisdictional Immunities of State (Germany v. Italy), Judgment, 2012 I.C.J. 99, ¶¶ 82-93 (Feb. 3). If a mere allegation of wrongdoing were sufficient to overcome immunity, the CPIUN would be rendered a nullity.

Plaintiffs' reliance on *United States v. Enger*, 472 F. Supp. 490 (D.N.J. 1978), is misplaced. The criminal defendants in *Enger* were Soviet nationals indicted on espionage charges. While the USSR's ambassador submitted letters claiming that the defendants were diplomats who had been "attached to the Secretariat" of the UN, the UN merely confirmed the defendants' titles and provided an explanation of their functions at the UN. *Id.* at 494-97. The UN did not assert immunity on behalf of the defendants under the CPIUN, let alone claim that their acts of espionage on behalf of the USSR were within their functions at the UN. Nor did the defendants assert immunity under the CPIUN. *Id.* at 498-99. Instead, the defendants asserted that they should be treated as *de facto* diplomats entitled to immunity under a vague concept of international law. *Id.* The district court rejected that argument and did not address the CPIUN. The other cases cited by

Plaintiffs similarly involve Soviet defendants who claimed diplomatic immunity from criminal espionage charges and do not address the CPIUN. In fact, most of those cases were decided before the U.S. ratified the CPIUN in 1970. None of them are relevant.

### B. Ms. Albanese's Mandate Was Not Terminated and Thus She Is Entitled to Immunity under the CPIUN

Plaintiffs argue that Ms. Albanese's mandate expired and was not validly renewed prior to the issuance of the Report and therefore she is not entitled to immunity. ECF No. 25 at 6-7. Plaintiffs allege that, prior to the renewal of her mandate for a second term in April 2025, certain complaints were filed accusing Ms. Albanese of persistent non-compliance with the "Code of Conduct" and that the President of the UNHRC failed to investigate or bring these complaints to the attention of the UNHRC. Compl. ¶¶ 61-66; ECF No. 25 at 6-7. Plaintiffs argue these alleged failures automatically made Ms. Albanese ineligible for a second term and thereby rendered the renewal of her mandate null and void. *Id.* These arguments are meritless.

As explained above, the Secretary-General has the right and responsibility to determine the status and immunity of experts under the CPIUN. Here, the Secretary-General has determined that Ms. Albanese is an expert on mission entitled to immunity with respect to the performance of her mandate, which includes her Report to the UNHRC. The Secretary-General has not waived her immunity and is asserting her immunity in this case. Likewise, the UNHRC has continued to fully treat her as validly in office and in continuing performance of her functions as Special Rapporteur.[6]

[6] *See, e.g.*, Francesca Albanese (Special Rapporteur for the Occupied Palestinian Territory), *Torture and Genocide*, UN Doc. A/HRC/61/71 (Feb. 19, 2026); Francesca Albanese (Special Rapporteur for the Occupied Palestinian Territory), *Gaza Genocide: a collective crime*, UN Doc. A/80/492 (Oct. 20, 2025), https://www.un.org/unispal/document/special-rapporteur-report-gaza-genocide-a-collective-crime-20oct25/ (transmitted by the Secretary-General to the General Assembly).

Plaintiffs offer no authority demonstrating their standing to collaterally attack the UN's applications of its own rules and procedures in connection with the renewal of Ms. Albanese's mandate or the handling of complaints against her. Their argument is based on a gross mischaracterization of the UNHRC Manual as automatically barring the renewal of a mandate holder's term any time a complaint is lodged against them. ECF No. 25 at 7. That is not how the UNHRC works. Paragraph 7 of the UNHRC Manual states:

> The President of the Human Rights Council will convey to the Council information brought to his or her attention including inter alia, by States and/or by the Coordination Committee of Special Procedures, concerning cases of persistent non compliance by a mandate-holder with the provisions of the HRC resolution 5/2, especially prior to the renewal of mandate-holders in office. The Council will consider such information and act upon it as appropriate. In the absence of the above-mentioned information, the terms in office of the mandate-holders shall be extended for a second three year term by the Council.

UNHRC Manual ¶ 7. This merely provides for the President of the UNHRC to convey to the UNHRC information demonstrating a mandate holder's "persistent non compliance" with the Code of Conduct. The UNHRC has the discretion to act on that information as it deems appropriate. But nothing in this paragraph automatically renders a mandate holder ineligible for renewal or requires the UNHRC to take any particular action against the mandate holder. Rather, in the absence of a finding of persistent non-compliance, the mandate holder's term continues.

Contrary to Plaintiffs' allegations, complaints about Ms. Albanese were investigated and conveyed to the UNHRC. Israel and "UN Watch" sent letters to the UNHRC accusing Ms. Albanese of persistent violations of the Code of Conduct. As Plaintiffs concede, the President of the UNHRC submitted these letters to the Coordination Committee of Special Procedures. Compl. ¶ 64. The Coordination Committee investigated the allegations against Ms. Albanese and did not find violations of the Code of Conduct. *See* Letter from the Chairs of the Coordination Committee

of Special Procedures to the UNHRC President, dated March 28, 2025.[7] Despite Plaintiffs' assertions to the contrary, the President of the UNHRC conveyed to the UNHRC these allegations of non-compliance with the Code of Conduct as well as the Coordination Committee's findings, in which it did not conclude that Ms. Albanese had violated the Code of Conduct. *See* Minutes of the UNHRC Bureau, dated April 1, 2025.[8] Per the publicly available Minutes of the UNHRC Bureau, this information was shared with the Member States of the UNHRC. The UNHRC did not take any formal action against Ms. Albanese, and she continues to hold her mandate as Special Rapporteur for the Occupied Palestinian Territory with a scheduled expiration in March 2028.[9]

### C. The United States Did Not Purport to Unilaterally Strip Ms. Albanese of Immunity under the CPIUN

Plaintiffs argue that the U.S. Government impliedly waived Ms. Albanese's immunity under the CPIUN by sanctioning her as a Specially Designated National ("SDN") under Executive Order 14203, Imposing Sanctions on the International Criminal Court, 90 Fed. Reg. 9369 (Feb. 6, 2025) ("E.O. 14203"), and that this supposed waiver is binding on this Court. ECF No. 25 at 7-8. This argument is baseless.

The plain text of Section 23 of the CPIUN gives the Secretary-General the exclusive authority to waive immunity of UN experts, such as Ms. Albanese, and such waiver must be express. *See* CPIUN art. VI, § 23; *see also Immunity from Legal Process of a Special Rapporteur*, ¶ 51. As explained above, the Secretary-General has not waived Ms. Albanese's immunity, and

---

[7] https://hrcmeetings.ohchr.org/PresidencyBureau/BureauRegionalGroupsCorrespondence/Pages/Bureau-meetings.aspx.

[8] https://hrcmeetings.ohchr.org/PresidencyBureau/BureauRegionalGroupsCorrespondence/BMeetings2014DL/Bureau%20meeting%20minutes%20of%201%20April%202025.docx.

[9] https://www.ohchr.org/en/special-procedures-human-rights-council/current-and-former-mandate-holders-existing-mandates.

is, instead, asserting her immunity in this case. Contrary to Plaintiffs' assertions, the governments of Member States cannot purport to override the Secretary-General's determinations and unilaterally waive the immunity of UN experts. *See Immunity from Legal Process of a Special Rapporteur*, ¶¶ 61-63. Plaintiffs cite no authority to the contrary.

Plaintiffs suggest that *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948), held that the Executive Branch has the power to determine the status and immunity of UN personnel. ECF No. 25 at 9. It merely states that courts cannot compel full disclosure of the Executive's foreign policy decisions. It has nothing to do with the UN or immunity.

Plaintiffs also rely on cases applying the recognition doctrine, which holds that the Executive Branch has sole authority to recognize foreign states, foreign governments and territorial claims of foreign states. ECF No. 25 at 9 (citing *Zivotofsky v. Kerry*, 576 U.S. 1 (2015) (holding that Congress could not recognize Jerusalem as Israeli territory)). The recognition doctrine has nothing to do with immunity.

Plaintiffs rely on *Habyarimana v. Kagame*, 696 F.3d 1029 (10th Cir. 2012), which applies the common law doctrine of foreign official immunity, as well as cases applying common law doctrines of diplomatic immunity that predate the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, and the Diplomatic Relations Act of 1978. ECF No. 25 at 9-10. Whatever deference is accorded to the views of the Executive under common law or modern laws of diplomatic immunity, no such deference is accorded under the CPIUN, which is a multilateral treaty that grants the Secretary-General the authority to determine the status and immunity of UN experts, such as Ms. Albanese. CPIUN art. VI, §§ 22-23. Individual Member States cannot override the UN's own determinations. *See Immunity from Legal Process of a Special Rapporteur*, ¶¶ 61-63.

In any event, the U.S. Government's designation of Ms. Albanese as an SDN did not purport to strip her of immunity under the CPIUN. Sanctions and immunity are distinct concepts. The U.S. Government often imposes sanctions on foreign sovereigns as well as foreign heads of state, and the imposition of sanctions does not strip them of immunity. For example, while the U.S. Government imposed sanctions on the Venezuelan Government under Executive Order 13884, Blocking Property of the Government of Venezuela, 84 Fed. Reg. 38843 (Aug. 5, 2019), the Venezuelan Government remains entitled to immunity from the jurisdiction of U.S. courts under the Foreign Sovereign Immunities Act, *see*, *e.g.*, *LS Energia Inc. v. Corporación Eléctrica Nacional S.A.,* No. 21-21642-CV, 2025 U.S. Dist. LEXIS 215522 (S.D. Fla. Sep. 17, 2025). Here, E.O. 14203 does not mention immunity or otherwise authorize any civil suits against any persons designated under that order. In fact, E.O. 14203 makes clear that it is not altering any substantive or procedural rights and therefore cannot be read as abrogating immunity and authorizing civil suits against any persons designated under that order. *See* E.O. 14203, § 12(c). Sanctions are simply irrelevant to this case.[10]

## III. This Case Must Be Dismissed for Lack of Personal Jurisdiction and Invalid Service of Process as Ms. Albanese Is Immune from Service of Process

Ms. Albanese is entitled to immunity from "legal process of every kind" under Section 22 of the CPIUN, which includes immunity from service of process. *See Askir v. Boutros-Ghali*, 933 F. Supp. 368, 371-72 (S.D.N.Y. 1996); *Boimah v. UN Gen. Assembly*, 664 F. Supp. 69, 72 (E.D.N.Y. 1987) (UN rejection of service of process manifests an intent not to waive immunity). Courts cannot obtain personal jurisdiction without proper service of process. *See Doran Law*

[10] The U.S. District Court for the District of Columbia entered a preliminary injunction enjoining the implementation and enforcement of the imposition of sanctions on Ms. Albanese, finding a likelihood of success on the merits of the challenge to her designation. *L.C. v. Trump*, No. 26-688 (RJL), 2026 U.S. Dist. LEXIS 250227, at *19-20 (D.D.C. May 13, 2026).

*Office v. Stonehouse Rentals, Inc.*, 678 F. App'x 733, 735 (10th Cir. 2017). Accordingly, this case must be dismissed for improper service of process and lack of personal jurisdiction under Federal Rules 12(b)(2) and 12(b)(5).[11]

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case with prejudice. The UN expressly reserves all rights, defenses, privileges and immunities and nothing in this motion or the UN's limited intervention should be construed as a waiver of any kind.

Dated: New York, N.Y.
June 12, 2026

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE, LLP

*/s/ Kevin A. Meehan*

Kevin A. Meehan
Robert Groot
Marwa Farag
Olivia J. Wang
101 Park Ave.
New York, NY 10178
Tel.: (212) 696-6197
Fax: (917) 368-8835
kmeehan@curtis.com
rgroot@curtis.com
mfarag@curtis.com
owang@curtis.com

*Attorneys for the United Nations*

[11] While immunity under the CPIUN is dispositive, this motion is without prejudice to any other personal jurisdiction or service of process defenses Ms. Albanese may have.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Plaintiffs.

*/s/ Kevin A. Meehan*
Kevin A. Meehan