**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, CHRISTIANS FOR ISRAEL USA,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRANCESCA PAOLA ALBANESE,<br><br>*Defendant*. | **Civil Action No. 1:25-cv-2805** |

**<u>Plaintiffs' Opposition to the United Nations' Motion to Intervene</u>**

## TABLE OF CONTENTS


**Preliminary Statement** .......... **1**

**Argument** .......... **2**

I. The Motion is Procedurally Defective on its Face and the UN Lacks Standing .......... 2

II. Proposed Intervenor is Not Entitled to Intervention as of Right .......... 4

A. Motion is Not Timely .......... 4

i. Proposed Intervenor's Application is Significantly and Unjustifiably Delayed .......... 5

ii. Intervention at this Stage Would Prejudice Plaintiffs .......... 6

iii. Denial of Intervention Would Not Prejudice the Proposed Intervenor. .......... 7

iv. Unusual Circumstances in this Case Militate Against Intervention .......... 8

B. Proposed Intervenor Has No Direct, Legal Interest in this Action .......... 10

C. Disposition Will Not Impair the Proposed Intervenor's Supposed Interest. .......... 11

D. The Proposed Intervenor's Supposed Interest is Adequately Represented .......... 12

III. Permissive Intervention is Unwarranted .......... 14

**Conclusion** .......... **15**

## TABLE OF AUTHORITIES

### CASES

*Abramson v. Pennwood Inv. Corp*, 392 F.2d 759 (2d Cir. 1968) ........ 3
*Arney v. Finney*, 967 F.2d 418 (10th Cir. 1992) ........ 18
*Askir v. Boutros-Ghali*, 933 F. Supp. 368 (S.D.N.Y. 1996) ........ 9, 14, 15
*Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869 (10th Cir. 1986) ........ 15
*Brown v. U.S. Dep't of Lab.*, No. 13-CV-01722-RM-MJW, 2017 WL 2986494 (D. Colo. July 13, 2017) ........ 7, 10
*Cali v. Trump*, No. 1:26-cv-00688-RJL (D.D.C. May 13, 2026) ........ 2, 14, 15, 19
*Cali v. Trump*, No. 26-5172, 2026 WL 1613422 (D.C. Cir. May 22, 2026) ........ 2, 19
*Colony Ins. Co. v. Burke*, 698 F.3d 1222 (10th Cir. 2012) ........ 19
*Degge v. City of Boulder, Colo.*, 336 F.2d 220 (10th Cir. 1964) ........ 14, 18
*Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488 (10th Cir. 1987) ........ 14
*Goodall v. Williams*, No. 18-CV-00980-PAB, 2018 WL 2008849 (D. Colo. Apr. 28, 2018) 12, 16
*Grimaldo v. Reno*, 189 F.R.D. 617 (D. Colo. 1999) ........ 11
*Hutchinson v. Pfeil*, 211 F.3d 515 (10th Cir. 2000) ........ 12
*In re Kaiser Steel Corp*, 998 F.2d 783 (10th Cir. 1993). ........ 5
*Kane Cty. v. United States*, 928 F.3d 877 (10th Cir. 2019) ........ 5
*McHenry v. Comm'r,* 677 F.3d 214 (4th Cir. 2012) ........ 10, 15
*Medellin v. Texas*, 552 U.S. 491 (2008) ........ 13
*Medina v. Samuels*, No. 20-CV-01443-NYW, 2020 WL 7398772 (D. Colo. Dec. 17, 2020) ..... 11
*Muscogee (Creek) Nation v. City of Tulsa*, No. 23-CV-490-JDR-SH, 2026 WL 736961 (N.D. Okla. Mar. 16, 2026) ........ 7
*NAACP v. New York*, 413 U.S. 345 (1973) ........ 5
*Nevilles v. Equal Emp. Opportunity Comm'n*, 511 F.2d 303 (8th Cir. 1975) ........ 6
*Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10 (S.D. W. Va. 2015) ........ 10
*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223 (10th Cir. 2010) ........ 5, 6, 8
*Oklahoma v. U.S. Dep't of the Interior*, 569 F. Supp. 3d 1155 (W.D. Okla. 2021) ........ 2
*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009) ........ 11
*S. Utah Wilderness All. v. Kempthorne*, 525 F.3d 966 (10th Cir. 2008) ........ 6, 13, 16, 17
*Schmidt v. City of Norfolk*, No. 2:24cv621, 2025 WL 1502994 (E.D. Va. May 27, 2025) ........ 7
*Shevlin v. Schewe*, 809 F.2d 447 (7th Cir. 1987) ........ 3
*Tennille v. W. Union Co*, No. 09-CV-938-JLK, 2015 WL 13938169 (D. Colo. Dec. 21, 2015) ... 8
*Thompson v. Masterson*, No. 23-CV-4120-TC-GEB, 2024 WL 3844746 (D. Kan. Aug. 16, 2024); ........ 9
*Town of Chester v. Laroe Estates, Inc*, 581 U.S. 433 (2017) ........ 4
*Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068 (10th Cir. 2015) ........ 13, 15, 17, 18
*United States v. Michigan*, 68 F.4th 1021 (6th Cir. 2023) ........ 7
*United States v. N. Colo. Water Conservancy Dist.*, 251 F.R.D. 590 (D. Colo. 2008) ........ 18
*Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111 (10th Cir. 2002) ........ 16, 17

### OTHER AUTHORITIES

Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights, Advisory Opinion, 1999 I.C.J. 62 (Apr. 29) .......... 11

**RULES**

Fed. R. Civ. P. 12 .......... 1, 3
Fed. R. Civ. P. 24 .......... passim

**TREATISES**

7A C. Wright & A. Miller, Federal Practice & Procedure§ 1909, at 529 (1972) .......... 12
7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916 (3d ed. 2007) .......... 14

**Preliminary Statement**

Plaintiffs Christian Friends of Israeli Communities and Christians for Israel USA, American Christian Zionist nonprofits that lawfully support Israeli civilian communities, were defamed for that support by Defendant Francesca Paola Albanese, erstwhile United Nations Special Rapporteur. In April 2025, Defendant sent letters to Plaintiffs accusing them of serious international crimes and criminal liability—accusations later published in a July 2025 report *From Economy of Occupation to Economy of Genocide* ("the Report"), notwithstanding warnings from Plaintiffs and US government officials that her statements were defamatory. Plaintiffs filed suit on September 8, 2025 for defamation, trade libel, and intentional interference with prospective economic advantage. ECF 1. Defendant intentionally evaded service, and Plaintiffs moved for recognition of their attempt to serve as proper service, or alternatively for substitute service by email and X. ECF 13, 21. After supplemental briefing on immunity, ECF 25, the Court granted substitute service on May 14, 2026. ECF 26. Defendant was served the following day, ECF 35, and failed to respond. The Clerk entered default on June 8, 2026. ECF 44.

On June 5, 2026—three days before default was entered—the United Nations ("UN" or "Proposed Intervenor") filed a Motion to Intervene on Defendant's behalf. ECF 40. On June 12, 2026, before this Court ruled on intervention, the UN belatedly lodged a "[Proposed]" motion to dismiss under Rules 12(b)(1), (2), and (5). ECF 47. That proposed motion does not acknowledge the entry of default; defends a single sentence in the Report while ignoring the remainder of Defendant's conduct on which the Complaint is based; and asks this Court—whose jurisdiction it disputes—to dismiss this case with prejudice. ECF 47 at 1–3, 15. The UN later separately filed a motion to vacate the entry of default that acknowledges the procedural gambit at play, which is for the UN to step into Defendant's shoes despite her default. ECF 48.

The UN's Motion is an improper use of intervention. Defendant was served, refused to appear, and defaulted. Intervention is a device to protect unrepresented third-party interests, not a mechanism for a defaulted defendant to litigate through a proxy. The UN's own prior conduct confirms this. Just one month earlier, in related sanctions litigation in the D.D.C., the UN addressed Defendant's immunity the way it always has in American courts: by letter. *See Cali v. Trump*, No. 1:26-cv-00688-RJL, ECF 48 at 7 (D.D.C. May 13, 2026); *see also Cali v. Trump*, No. 26-5172, 2026 WL 1613422 (D.C. Cir. May 22, 2026) (staying district court order enjoining sanctions). It did not seek party status there. The motion to intervene should be denied.

## Argument

Intervention is not a remedy to be granted lightly. *Oklahoma v. U.S. Dep't of the Interior*, 569 F. Supp. 3d 1155, 1159 (W.D. Okla. 2021) (explaining Rule 24 must be applied with the court's "judgment based on the specific circumstances of the case." (cleaned up)). A motion to intervene filed nine months after the filing of the Complaint, unaccompanied by the pleading Rule 24(c) requires, by a Proposed Intervenor whose supposed interest is already adequately represented and whose participation would prejudice Plaintiffs, should be denied. Moreover, a motion to intervene used as a procedural device to circumvent the Federal Rules of Civil Procedure, including Defendant's default engineered by the Proposed Intervenor, is a misuse of Rule 24 this Court should reject.

### I. Motion is Procedurally Defective on its Face and the UN Lacks Standing

Before the Court reaches the Rule 24(a) factors, the motion fails on its face. Rule 24(c) commands that a motion to intervene "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The UN attached nothing. Its motion conceded the omission and asked this Court to treat a then-unfiled motion to dismiss as

the pleading the Rule requires. ECF 40 at 11 n.2. The UN has since lodged that proposed motion, ECF 47, but the defect remains because a Rule 12 motion is not a pleading. Courts deny intervention for precisely this failure. *See Abramson v. Pennwood Inv. Corp*, 392 F.2d 759, 761 (2d Cir. 1968) (affirming denial of intervention where the movant failed to attach the required pleading); *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) ("Federal Rule of Civil Procedure 24(c) is unambiguous in defining the procedure for an intervenor.").

The defect is not a technicality; it is the motion's design. The UN cannot file a pleading because pleadings are what *parties* file, and the UN's entire theory is that it is absolutely immune from ever being treated as one. Its motions accordingly state the UN "expressly reserves all rights, defenses, privileges and immunities," disclaiming "a waiver of any kind." ECF 40 at 11, ECF 47 at 1, 15. The UN thus proposes to intervene as a party, file a dispositive motion, and obtain a ruling, while declaring itself immune from this Court's jurisdiction, exempt from its orders, and beyond the reach of any judgment. Intervenors become parties, subject to the obligations of parties, including discovery, costs, and compliance with Court orders. The UN seeks party status for purposes of winning and non-party status for every other purpose. No rule of procedure contemplates a litigant that may demand rulings from a Court whose jurisdiction the litigant simultaneously rejects. Heads the UN wins; tails it is immune.

The motion fails for a second, independent threshold reason: the UN lacks Article III standing to pursue the only relief it identifies. An intervenor of right "must meet the requirements of Article III [standing]" whenever it pursues "relief not requested" by an existing party. *Town of Chester v. Laroe Estates, Inc*, 581 U.S. 433, 439–40 (2017). Defendant has sought no relief; she defaulted. The dismissal the UN seeks is therefore relief no party has sought, and the UN must

establish its own injury in fact, fairly traceable to this litigation, and redressable by a favorable ruling. Its own brief defeats that showing. The UN insists that it is immune from all legal process, that no judgment of this Court can bind it, and that nothing it files here constitutes waiver. By the UN's own account, then, this litigation cannot reach it, compel it, or preclude it from any future assertion of its immunities. An entity that litigation can never reach has no concrete injury from litigation's outcome. The UN cannot be untouchable for purposes of immunity and injured for purposes of standing in the same brief.

## II. Proposed Intervenor is Not Entitled to Intervention as of Right

Federal Rule of Civil Procedure 24(a) permits intervention as of right where four requirements are met: (1) the Proposed Intervenor's application is timely; (2) the Proposed Intervenor has a direct, substantial and legally protectable interest relating to the underlying dispute; (3) the disposition of the action may impede or impair the Proposed Intervenor's interest; and (4) the Proposed Intervenor's interest is not adequately represented by existing parties. *In re Kaiser Steel Corp*, 998 F.2d 783, 790 (10th Cir. 1993). Here, the Proposed Intervenor's application fails as to each requirement. Plaintiffs do not quarrel with the UN's observation that the Tenth Circuit applies these requirements practically rather than mechanically, *Kane Cty. v. United States*, 928 F.3d 877, 890–91 (10th Cir. 2019), and they embrace that standard here: even on a practical view, and even under the "minimal burden" the UN invokes, a supposed interest cannot support intervention when it is a premised on coordination between the Proposed Intervenor and Defendant, and would effectively grant the would-be intervenor with relief from a judgment that would not in any way impair its interests.

### A. Motion is Not Timely

That a motion to intervene be timely is a threshold requirement, not a mere factor to consider. *NAACP v. New York*, 413 U.S. 345, 366–67 (1973) (finding intervention untimely where proposed intervenors moved after it "knew or should have known" of the lawsuit's pendency for over three months); *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010). The court assesses timeliness considering all circumstances, with three factors of particular import: (1) length of time since the Proposed Intervenor knew of its interests in the case; (2) prejudice to existing parties; and (3) prejudice to the Proposed Intervenor. *Id.* The court will also consider any "unusual circumstances." *Id.*

**i. Proposed Intervenor's Application is Significantly and Unjustifiably Delayed**

Delay in an application to intervene is measured "from when the movant was on notice that its interests may not be protected by a party already in the case." *Id.* at 1232. Here, the Complaint was filed on September 8, 2025, and the Proposed Intervenor should have known of the pendency of the action from that date, including through media coverage of the lawsuit. *Nevilles v. Equal Emp. Opportunity Comm'n*, 511 F.2d 303, 305 (8th Cir. 1975) (explaining the burden is on the would-be intervenor to demonstrate that they had no notice of the action). At the very latest, the Proposed Intervenor had actual knowledge of the pendency of this suit since October 3, 2025, as the UN's proposed motion to dismiss attaches a letter from UN Legal Counsel to the U.S. Representative to the UN from that date asserting Defendant's immunity in this case. ECF 47, Ex. A; *see also* ECF 13-1, Ex. C at ¶ 31 (Plaintiffs' process servers attesting that Defendant had "been advised by legal counsel from the [UN] not to accept service"). The UN thus documented and filed proof of its own knowledge of the case from eight months before it moved.

The UN does not dispute that it was on notice. Instead, the UN argues that, up until Defendant was served on May 15, 2026, it believed the Court would simply throw out the Complaint *sua*

*sponte*. Mot. at 6. This wait-and-see approach as an excuse for delay has been widely rejected. *S. Utah Wilderness All. v. Kempthorne*, 525 F.3d 966, 971 (10th Cir. 2008) (denying application as untimely as a movant may not "simply wait and see if the trial's outcome leaves intervention desirable with its attendant risk of undoing what the trial court has already done" (internal citation omitted)); *Muscogee (Creek) Nation v. City of Tulsa*, No. 23-CV-490-JDR-SH, 2026 WL 736961, at *6 (N.D. Okla. Mar. 16, 2026) ("Optimism that this Court would grant a dismissal is not a valid reason for delaying a motion to intervene. In general, 'if parties take a wait-and-see approach to intervention, they lose on timeliness.'" (quoting *United States v. Michigan*, 68 F.4th 1021, 1028 (6th Cir. 2023) (cleaned up)); *Schmidt v. City of Norfolk*, No. 2:24cv621, 2025 WL 1502994, at *4 (E.D. Va. May 27, 2025) ("[A] strategic decision not to intervene sooner due to a belief that the court would grant a motion to dismiss cannot justify tardiness.").

Additionally, the UN was aware the Court was not prepared to reflexively dismiss the Complaint based on alleged immunity given this Court's request in January for supplemental briefing on this very issue. *Brown v. U.S. Dep't of Lab.*, No. 13-CV-01722-RM-MJW, 2017 WL 2986494, at *1–2 (D. Colo. July 13, 2017) (denying intervention as inexcusably delayed when the proposed intervenor failed to timely apply even after a letter was on the docket that asked the proposed intervenor to "express its views on the lawsuits"). Yet, even then, the UN did nothing. Proposed Intervenor's lengthy delay in its application based on the speculative assumption that the court will *sua sponte* dismiss is no excuse, and the motion should be denied on this basis alone. The UN's gesture toward the 60-day response periods afforded the United States and foreign states, Mot. at 6, refutes itself: the UN is neither.

**ii. Intervention at this Stage Would Prejudice Plaintiffs**

The UN's untimeliness would be the direct cause of prejudice to Plaintiffs, as the Proposed Intervenor's decision to only intervene now, after a nine-month delay since the opening of proceedings and five months after the Court ordered briefing on immunity, is timed exactly with Defendant's default. Plaintiffs face prejudice from an intervention that would disturb the default now already entered, which would reopen proceedings (as the UN attempts to do with its improper motion to dismiss), and require re-litigation of immunity issues Plaintiffs already briefed in February. *Tennille v. W. Union Co*, No. 09-CV-938-JLK, 2015 WL 13938169, at *1 (D. Colo. Dec. 21, 2015) (rejecting attempted intervention timed for resolution of litigation as a ploy aimed to "thwart" and "hold hostage" the proceedings); *Edmondson*, 619 F.3d at 1236 (rejecting intervention as the "delay would create prejudice—prejudice that would not have resulted from an earlier intervention"). The UN's motion to vacate the clerk's entry of default against Defendant admits the UN's collusion with Defendant to manipulatively disrupt proceedings, rather than properly engaging with the litigation process. ECF 48 at 5–6. To allow the UN to intervene in this litigation as a party would serve no purpose other than to waste Court resources, delay appropriate disposition of the case, and reward the improper conduct of both Defendant and the UN.

**iii. Denial of Intervention Would Not Prejudice the Proposed Intervenor**

The Proposed Intervenor would not be prejudiced by denial as the appropriate measure for the UN to have its positions heard in this case is an amicus brief, not intervention. The Proposed Intervenor does not cite a single case where the UN moved to intervene in a case against an actual or purported UN official for purpose of asserting the defendant's immunity. Instead, the UN relies on *Askir v. Boutros-Ghali*, 933 F. Supp. 368 (S.D.N.Y. 1996), but that case only highlights the defects and misguided nature of the instant motion. In *Askir*, the UN did *not* move to intervene and was *not* added as a party. The *Askir* court heard and reviewed the UN's position on immunity

through a letter. *Id.* at 370. Moreover, the procedural posture of *Askir* is inapposite; there, "[t]he U.N. Defendants [had] not been served" and there was no argument over whether the UN defendants were, in fact, UN officials. *Id.* Here, Plaintiffs have served Defendant and dispute that Defendant is in any way UN personnel entitled to immunity. Thus, it is Defendant, not the UN, who must appear and present any argument regarding her claimed immunity—but she defaulted.

Because the UN's interests may be adequately captured through amicus participation, full party status is both unnecessary and inappropriate. *Thompson v. Masterson*, No. 23-CV-4120-TC-GEB, 2024 WL 3844746, at *9 (D. Kan. Aug. 16, 2024); *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 16 (S.D. W. Va. 2015) (offering amicus as a sufficient alternative); *McHenry v. Comm'r*, 677 F.3d 214, 227 (4th Cir. 2012) (denying intervention as any views on the issue could be raised by amicus). The Proposed Intervenor may bring its position to the court's attention through an amicus or letter as it has done in past cases, and as it did one month before filing this motion in the related litigation over Defendant's sanctions, *see infra* Part III, without suffering any prejudice.

Finally, denial of the application "cannot be prejudicial to" the Proposed Intervenor when it would be the direct result of the UN's own "fail[ure] to intervene sooner." *Brown*, 2017 WL 2986494, at *4. Allowing the UN to intervene would constitute a reward for its own delay.

**iv. Unusual Circumstances in this Case Militate Against Intervention**

A particularly troubling aspect of the timing of the UN's motion is that it comes only after Plaintiffs successfully served Defendant and was filed on the very last day Defendant had to respond to the lawsuit, for the express purpose of attempting to stand in for a Defendant whom the UN instructed to evade service and refuse to appear in court. *See* ECF 48 at 5; ECF 40 at 4 (stating the UN's position that the Defendant "has no obligation to respond to the Complaint."); ECF 47-

1; ECF 13-1, Ex. C at ¶ 31. If Defendant believed the Court-ordered method of service was improper—due to immunity or any other basis—the mechanism through which to challenge it was a Federal Rule of Civil Procedure 12(b)(5) motion for insufficient service of process.[1] Of course, that defense has now been waived as Defendant defaulted instead. *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999) (holding government officials sued in their individual capacities waived 12(b)(5) and qualified immunity defenses after failing to properly brief them). Defendant is not simply absolved of appearing in court and responding to a properly served Complaint and Summons because she and Proposed Intervenor believe her to be immune.

Intervention is a procedural device designed to allow non-parties with genuine, independent interests to participate in litigation; it is not a tool for defendants to use third parties as proxies to avoid the consequences of their own refusal to engage in the litigation process. *Cf. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 12 (1st Cir. 2009) (rejecting motion to intervene brought to challenge a sealing order, where the request "touches upon an issue of transparency in the federal judicial system," and cautioning that such measures "are not like party favors, available upon request or as a mere accommodation"); *see also Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) ("intervention is not a means to escape the consequences of noncompliance with traditional rules of . . . jurisdiction and procedure," concerning appellate intervention). Allowing the UN's maneuver would send a message to defendants that they can

[1] Note that even if wrongly allowed to intervene, the UN would have no standing to bring such a defense on Defendant's behalf, just as it has no standing to bring a motion to dismiss as it has attempted to do. *Medina v. Samuels*, No. 20-CV-01443-NYW, 2020 WL 7398772, at *6 n.4 (D. Colo. Dec. 17, 2020) ("Defendant Miller makes arguments on behalf of other Defendants not party to her Motion to Dismiss, but Defendant Miller lacks standing to assert such arguments.")

immunize themselves from default by arranging for sympathetic third parties to intervene on their behalf, undermining the judicial system's integrity.

The unusual circumstances of this litigation can be reduced to a single sentence: the UN's own counsel advised Defendant to evade service in October, and the Proposed Intervenor now moves this Court for the privilege of party status in June. These circumstances weigh heavily against granting this motion.

Based on the untimeliness of the application alone, the UN's motion should be denied.

**B. Proposed Intervenor Has No Direct, Legal Interest in this Action**

The Proposed Intervenor cannot demonstrate that it has a substantial and legally protectable interest relating to the underlying dispute. *Goodall v. Williams*, No. 18-CV-00980-PAB, 2018 WL 2008849, at *5 (D. Colo. Apr. 28, 2018) (rejecting the proposed intervenor's four supposed interests as either irrelevant or too general). The interest asserted by the UN is Defendant's immunity. So, either the UN is in truth representing Defendant—as it admits to doing in its motion to set aside default, ECF 48 at 5—and a motion to intervene is the improper vehicle, or the UN is purporting to have an interest distinct from any alleged immunity redounding to Defendant, but no such interest emerges. Instead, as the UN acknowledges, it and Defendant share an identical interest. *See* ECF 48 at 5; Email from Counsel for the Proposed Intervenor (June 1, 2026), attached hereto as Exhibit 1 ("We represent the United Nations, which intends to file a motion to intervene . . . for the limited purpose of ***asserting immunity of the UN and the defendant***." (emphasis added)); *Kempthorne*, 525 F.3d at 970 (denying intervention where interest was shared by both defendant and nonparty); *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (denying intervention where "the objective

of the applicant for intervention is identical to that of one of the parties" (internal citations and quotations omitted)).

The UN purports to argue the entire enterprise of UN immunity is at stake with this litigation, Mot. at 7, but no such issue is present or implicated by this litigation, where any immunity issue is fact-specific and can be raised by Defendant herself. Plaintiffs disagree with Defendant and the UN that Defendant possesses any immunity with respect to the Complaint's claims. However, the instant question is not Defendant's immunity or lack thereof,[2] but whether the UN has any basis for thrusting itself into this action *as a party* to argue immunity. If Defendant has immunity to raise as a defense to this litigation, she had every opportunity to do so. And as *Askir* *Cali* demonstrate, the UN need not be a party to express its view on immunity.

**C. Disposition Will Not Impair the Proposed Intervenor's Supposed Interest**

Impairment is tied inextricably with the existence of an interest; where the former does not exist, the latter cannot be proven. *Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987) ("the interest and impairment requirements of Rule 24(a)(2) are intertwined"). Where, as here, Plaintiffs sue an erstwhile UN expert on mission for defamation made in her individual capacity, the UN as a Proposed Intervenor cannot satisfy the impairment-of-interest element.

*First*, as Plaintiffs argue, no functional UN immunity is implicated here. *See* ECF 25 at 6–14. *Second*, any judgment against Defendant would not foreclose the UN from asserting its immunity in other proceedings. *Jennings*, 816 F.2d at 1492 (denying intervention where proposed intervenor

[2] The UN relies heavily on a non-binding advisory opinion of the International Court of Justice ("ICJ"), Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights, Advisory Opinion, 1999 I.C.J. 62 (Apr. 29). This is a merits-based argument to be raised in a proper substantive motion. If and when said arguments are properly raised, Plaintiffs oppose the application of this nonbinding ICJ advisory opinion. *See Medellin v. Texas*, 552 U.S. 491, 504–11 (2008).

"would not be bound by res judicata or collateral estoppel from litigating" issues in the future). Any disposition of this case will not, as a practical matter, impair the UN's interests. Indeed, the UN itself insists no judgment of this Court can ever bind it, but in the same breath claims this case's disposition will impair it. By the UN's own theory, there is nothing here for it to lose. *Degge v. City of Boulder, Colo.*, 336 F.2d 220, 222 (10th Cir. 1964) (internal citation omitted). *Third*, the impairment prong is not met where the proposed intervenor could express its views through an amicus brief. *McHenry*, 677 F.3d at 227. The UN knows it need not be a party to this action to express its views; again, its conduct in *Askir* and *Cali* prove that.

**D. The Proposed Intervenor's Supposed Interest is Adequately Represented**

Where the existing parties already adequately represent the Proposed Intervenor's interests, intervention as of right *must* be denied. Fed. R. Civ. P. 24(a)(2); *Tri-State*, 787 F.3d at 1072. Where the Purported Intervenor and the Defendant's interests are identical, adequate representation is presumed, and the Proposed Intervenor must rebut by making a "concrete showing" of inadequate representation, which the UN has flatly failed to do. *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872–73 (10th Cir. 1986) (denying intervention as adequate representation existed where the proposed intervenor had "an identical interest and motivation in obtaining the greatest possible recovery" with an existing party—despite a serious dispute between the two on certain issues); *see also* 7A C. Wright & A. Miller, *Federal Practice & Procedure*§ 1909, at 529 (1972).

The UN has not made *any* effort to demonstrate its alleged interest is inadequately represented by existing parties. Instead, it merely argues it desires to be the one to argue Defendant's immunity. Mot. at 9; *see also* Exhibit A; *see also* ECF 48 at 5. This is not an inadequacy of representation argument; it's a request that the Court simply honor Defendant and the Proposed Intervenor's procedurally defective preference for which should handle briefing in this case. *Goodall*, 2018 WL

2008849, at *7 ("The Court finds that the intervenors' arguments do not demonstrate inadequate representation so much as their desire to expand the scope of this lawsuit.").

The UN may respond that a defendant in default represents nothing, so any representation is, by definition, inadequate. The answer is threefold. *First*, the inadequacy is self-inflicted, as the UN's own counsel advised Defendant to evade service, ECF 13-1, Ex. C at ¶ 31; *see also* ECF 40 at 4. The UN engineered the empty chair, and it now points to the empty chair as its grounds for intervention. A movant cannot manufacture the inadequacy it invokes any more than it can wait and see whether intervention becomes desirable. *Cf. Kempthorne*, 525 F.3d at 971. *Second*, what the UN actually seeks is not representation of a distinct interest but substitution of Defendant's interest: it proposes to stand in the well where the defaulting Defendant should be standing. Rule 24 is not a defendant-replacement mechanism. *Third*, the safeguards that matter already exist. This Court has an independent obligation to confirm its own subject matter jurisdiction, an obligation it has already twice discharged *sua sponte*, and the UN's views can reach the Court through amicus. The Court does not need a defaulting Defendant's sponsor as a party to get the law right.

The UN relies on *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111 (10th Cir. 2002) to argue it offers inadequately represented "unique expertise." Mot. at 9–10. But in *Utahns*, the Court granted intervention because it believed the intervenor "provide[d] expertise the government agencies may be lacking," because "the government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation." *Id.* at 1117 (cleaned up). Here, the UN states it plans to argue

immunity equally on behalf of itself and Defendant; the UN thereby admits there is no conflict or deficiency in how Defendant would have independently presented immunity.

Thus, the UN has not overcome the presumption of adequate representation where interests are identical, and for this reason alone, even if the Court were to conclude that some elements of Rule 24 were met, the motion must be denied. *Kempthorne*, 525 F.3d at 970 (denying intervention where presumption of adequate representation not rebutted); *Tri-State*, 787 F.3d at 1072 (the same).

## III. Permissive Intervention is Unwarranted

Permissive intervention under Rule 24(b) is discretionary, and in determining whether it is warranted, "a court may consider such factors as: (1) whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights; (2) whether the would-be intervenor's input adds value to the existing litigation; (3) whether the petitioner's interests are adequately represented by the existing parties; and (4) the availability of an adequate remedy in another action." *United States v. N. Colo. Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008); *Degge*, 336 F.2d at 222.

*First*, the timeliness requirement is stricter in permissive intervention than in intervention as of right, 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916 (3d ed. 2007), and as discussed extensively above, the motion is unduly delayed. Moreover, undue delay or prejudice is present where granting the application for intervention would "clutter the action unnecessarily." *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir. 1992). If the UN were to be permitted into the case as a party and loses its proposed motion to dismiss it, Plaintiffs will be forced to argue claims against an institution that has nothing at all to do with its actual allegations made against an individual Defendant. The UN's presence as a party would lead

to a cascade of burdensome results, including discovery that would not reach relevant issues, while protecting Defendant from the consequences of her defamation. *Tri-State*, 787 F.3d at 1074.

*Second*, the UN argues it provides a perspective on immunity now absent from the record. However, as argued above, the UN's input on immunity can be more easily and cleanly be obtained through an amicus or letter to the court, and the UN has no arguable interest or insight whatsoever beyond the immunity question. Should Plaintiffs win the UN's proposed motion to dismiss, there would be no cognizable reason why Plaintiffs should be arguing against the UN about defamatory statements made by Defendant. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1239 (10th Cir. 2012) ("[E]ven an intervenor of right . . . does not have an unlimited right to participate in every aspect of the litigation."). For the limited purpose of discussing immunity, the UN need not be a party.

*Third*, as discussed above, where there is no independent interest, there is no inadequate representation. Defendant was perfectly and reasonably situated to mount her own defense. The UN has no need to be a party in this action to opine on immunity, just as it has not moved to intervene in the suit Defendant's family brought to challenge US sanctions. *Cali*, No. 1:26-cv-00688-RJL, ECF 48 at 7; *see also Cali*, 2026 WL 1613422 (staying district court order enjoining sanctions). The UN may speak here, too, by letter.

*Fourth*, there is no reason to consider whether an adequate alternative forum exists where the UN could pursue any claims or defenses, because there are no independent claims or defenses of the UN implicated by this lawsuit. Regardless of the disposition of this case, there is no follow up litigation the Proposed Intervenor would conceivably pursue on the underlying facts.

**Conclusion**

For the foregoing reasons, the Court should deny the UN's Motion to Intervene.

Dated: June 16, 2026

Respectfully submitted,

National Jewish Advocacy Center

*/s/ Rachel Sebbag*

Rachel Sebbag
NATIONAL JEWISH ADVOCACY CENTER, INC.
1954 Airport Road Suite 1196
Atlanta, GA 30341
rachel@njaclaw.org
332.278.1100
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and to be served on Defendant by email and via the social media platform X in the manner authorized by the Court's May 14, 2026 Order, ECF 26.

/s/ *Rachel Sebbag*
Rachel Sebbag