**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, CHRISTIANS FOR ISRAEL USA,

*Plaintiffs*,

v.

FRANCESCA PAOLA ALBANESE,

*Defendant*.

**Civil Action No. 1:25-cv-02805**

**Plaintiffs' Opposition to the United Nations' Motion to**
**Vacate the Clerk's Entry of Default**

## PRELIMINARY STATEMENT

A default does not dissolve simply because a non-party would prefer it gone. Defendant Francesca Albanese was served with the Summons and Complaint by the method authorized by this Court. ECF 26; ECF 35. She did not answer. She did not appear. She did not move to dismiss, to quash service, or anything else. The Clerk entered her default. ECF 44. The United Nations ("UN"), which is not a party—whose motion to intervene Plaintiffs have opposed, ECF 53, and which remains undecided—now asks the Court to erase that default under a Rule the UN insists in the same breath cannot reach it. ECF 48. The motion to vacate fails for three independent reasons.

*First*, the UN is not the correct party to contest Defendant Albanese's default, on multiple interrelated fronts: (1) Rule 55(c) contemplates the circumstances under which the defaulting party, not a non-party, may set aside the default; (2) intervention is a precondition a stranger to the case must satisfy before seeking relief, and the UN's intervention is contested and undecided; and (3) the UN lacks Article III standing to seek vacatur, because on its own telling, nothing in this litigation can reach it, bind it, or waive anything it holds. The UN cannot be untouchable because of immunity and aggrieved for Rule 55 in the very same brief. ECF 48 at 5.

*Second*, the default itself is not void. The UN offers a syllogism. Ms. Albanese is immune; immunity is jurisdictional; therefore, the default is void and vacatur is mandatory. ECF 48 at 4–5. The argument fails at the first premise. This Court has *not* held that Ms. Albanese is immune. It ordered supplemental briefing on her immunity because the question is disputed, ECF 16, and when it authorized substitute service it assumed "without deciding, that immunity does not bar service[]" and reserved the jurisdictional questions for "a later date." ECF 26 at 5. An immunity

defense asserted, contested, and expressly reserved is not an adjudicated absence of jurisdiction. It is a disputed question of law and fact that must be decided, not a defect.

*Third*, the good cause factors under Rule 55(c) provide that fraud and collusion weigh heavily against vacatur. Here, the sequence of events, the UN's own filed documents, and statements by UN counsel, demonstrate that the UN and Defendant have worked in lockstep to evade the American justice system. The UN's own counsel knew about this case in October 2025 and advised Defendant to evade service. ECF 47-1; ECF 13-1, Ex. C, Berman Aff. ¶ 31. The UN then watched this case for at least eight months. It moved to intervene on the last day Defendant had to respond, "for the limited purposes of asserting immunity" on Defendant's behalf. ECF 40 at 4. It filed a proposed motion to dismiss four days after the Clerk entered default, ECF 47, and followed with this motion to vacate, ECF 48. The UN engineered the empty chair. It cannot now point to the empty chair as cause to clear the record.

Because the UN's motion to vacate fails on every possible measure, it should be denied.

**ARGUMENT**

**I. The United Nations Cannot Invoke Rule 55(c).**

As a threshold matter, before addressing the good-cause factors, immunity, or any other merits arguments, the Court must first determine whether the UN is entitled to move for vacatur. It is not.

**A. Rule 55(c) Relief Runs to the Defaulting Party.**

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *United States v. Rice*, 295 F. App'x 898, 901 (10th Cir. 2008). The burden of demonstrating good-cause rests with the defaulting party, and Defendant here has not sought any

relief. *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, No. 10-CV-01799-ZLW-MJW, 2010 WL 5184732, at *1 n.2 (D. Colo. Dec. 15, 2010) ("An Answer cannot properly be filed in this case unless the entry of default has been set aside, and the entry of default cannot be set aside until Defendant shows good cause to do so . . ."). The Rule 55(c) good cause standard comprises three elements, each assessed with respect to the party against whom default was entered: the defaulting party's culpability, the defaulting party's defenses, and prejudice to the opposing party if the default is set aside. *See infra* Section III. This test simply cannot apply to a non-party, as non-party, by definition, has neither culpability nor defenses to assert, and can suffer no prejudice from someone else's default. The procedural architecture of Rule 55(c) is built for the defaulting party, not a non-party. *Cf. In re Brooke Corp.*, No. 08-22786, 2016 WL 1603801, at *3 (Bankr. D. Kan. Apr. 19, 2016), *aff'd sub nom. Orr v. Brooke Corp. Bankr. Est.*, 566 B.R. 63 (D. Kan. 2017) ("persons other than a party or its legal representative do not have standing to file a Rule 60(b) motion"). Relief from an *entry* of default is narrower still, because no judgment has even issued.

**B. Intervention Is a Precondition the UN Has Not Met.**

The UN is not a party. It is a would-be intervenor whose application Plaintiffs oppose and which this Court has not granted, and a non-party cannot move for relief in a case it has not been permitted to enter. *UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Mining Corp.*, 261 F. App'x 105, 108 (10th Cir. 2008) (reprimanding would-be intervenor for arguing district court erred in rejecting its request for entry of default as if it were "entitled to [default] . . . simply because it . . . ask[ed]," while "refus[ing] to acknowledge the fact that at the time it filed its requests for default it was not a proper" party because "its initial motion to intervene had been denied"). The motion to vacate is parasitic on the motion to intervene. Thus, if the Court denies

intervention (as Plaintiffs have argued it should, ECF 53), the UN never becomes a party, and there is nothing left for the UN to vacate. The two motions stand or fall together, and both should fall.

**B. The UN Lacks Article III Standing to Seek the Only Relief It Identifies.**

Finally, and at the most basic level, the UN lacks Article III standing to seek vacatur, because on its own telling nothing in this litigation can reach it, bind it, or waive anything it holds. ECF 48 at 4–5. The UN cannot be untouchable for purposes of immunity and aggrieved for purposes of Rule 55 in the very same brief.

As a threshold matter, a would-be intervenor has two pathways to satisfy Article III standing, by establishing that they have either (i) independent Article III standing or (ii) piggyback standing. *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009). For the former, the would-be intervenor must establish the basics of Article III standing as any plaintiff would: (1) injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) that injury is fairly traceable to the defendant's action; and (3) that injury is likely redressable with a favorable decision. *Id.*

For piggyback standing, the would-be intervenor must demonstrate that there is "another party to the litigation that has sufficient standing to assert the claim at issue." *Id.* at 1080 (cleaned up). However, "a proposed intervenor may not establish piggyback standing where the existing parties are not seeking judicial resolution of an active dispute among themselves." *Id.* at 1081. Here, Defendant has not sought any relief. She defaulted. There is no position she has presented for the UN to "piggyback" onto.

Therefore, the UN must establish by independent Article III standing that it has the right to the relief it seeks here, i.e. vacatur and dismissal. It cannot do so.

The UN has demonstrated no injury whatsoever, and indeed its core argument is that by virtue of its immunity, nothing in this litigation can bind it or affect its rights. It seems to attempt to argue that this lawsuit in some way endangers the edifice of UN institutional and functional immunity, but that contention is incompatible with its own premise that its immunity cannot be impaired. *See* ECF 40 at 4, 11; ECF 47 at 1, 15; ECF 48 at 7. The theory has no internal logic and collapses under the merest scrutiny. An entity that maintains that nothing in a case can ever reach it has described the absence of an injury, not the presence of one.

Of course, if there is no injury, it cannot be fairly traceable. But even assuming arguendo that the UN has established an injury-in-fact, this case still does not implicate any injury to the UN. When the Court ultimately determines Defendant's immunity status, if Defendant is found immune, then there is no harm to the UN's immunity; if Defendant is *not* immune, then that determination likewise cannot impair any immunity the UN claims to possess. *Defendant*—not the UN—would then have to face the consequences of her defamation of Plaintiffs.

Finally, there is no redressability available because the UN's most fundamental position is that it cannot be harmed or bound by any decision this Court could issue.

**II. The Default Is Not Void.**

The UN argues there is "no need to parse the good cause factors" because the default is void. ECF 48 at 4. That shortcut is open only when the court actually lacked jurisdiction. This Court has made no such finding. The Tenth Circuit treats "void" as a conclusion to be earned, not a label to be claimed: a belated voidness contention does not command relief absent a showing that the court lacked jurisdiction or otherwise acted without power. *Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1014 (10th Cir. 2025).

**A. This Court Has Not Held That Defendant Is Immune.**

The Court held that immunity under the Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418 ("CPIUN"), presents a question of subject-matter jurisdiction. ECF 26 at 3–5. It denied recognition of Plaintiffs' attempted personal service on unrelated grounds and authorized substitute service by email and X. *Id.* at 5–6, 9. It also noted that "responsive briefing on the immunity issue would be beneficial." *Id.* at 5.

The Court did not hold that Defendant is immune. Nor did it hold that the CPIUN bars service on her. To the contrary, it authorized service while "presum[ing], without deciding that immunity does not bar service" and stated that the jurisdictional issues could be "resolved at a later date." *Id.* The UN treats a reserved question as a decided one. It is not.

A court does not lose jurisdiction to enter a default simply because a non-party asserts that the defendant is immune. The immunity question is for the Court to decide on a record when it is properly presented—for instance, on a motion for default judgment. Until then there is no jurisdictional defect to render anything void. *Cf. Smith v. World Bank Group*, 99 F. Supp. 3d 166, 169 (D.D.C. 2015) (finding a clerk's entry of default against an immune defendant "void from the outset for lack of jurisdiction," only *after* it independently determined that the defendants were in fact immune).

The immunity finding comes first; voidness can only follow as its consequence. No court has held that a disputed, unadjudicated immunity defense renders a default void as a matter of law merely because it is asserted, and none of the UN's cited cases says otherwise. ECF 48 at 4. Much of the case law cited by the UN—including *Republic of Sudan v. Harrison,* 587 U.S. 1 (2019), *Simon v. Southern R. Co.,* 236 U.S. 115 (1915), and *Hukill v. Okla. Native Am. Domestic Violence*

*Coal.*, 542 F.3d 794, 797–98 (10th Cir. 2008)—simply involve courts setting aside default judgment where the named defendant contested service as improper. In *Polaski v. Colorado Dep't of Transp.*, the defendant (not a non-party) properly raised Rule 12(b)(1) and 12(b)(5) arguments to set aside default. The plaintiff did not contest the improper service arguments—unlike here—and nowhere did the court state that the subject matter jurisdiction arguments render the default void. 198 F. App'x 684, 685 (10th Cir. 2006). Rather, it dismissed the complaint without prejudice because of the jurisdictional concerns. *Id.* at 686.

The UN also leans on *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013). ECF 48 at 4. It, too, cuts against the UN—twice. The default judgment there was vacated as void only after the district court adjudicated Iran's immunity de novo, *id.* at 1178–79, and the motion to vacate was filed by Iran, the sovereign defendant itself, after it appeared. *Id.* Here, by contrast, there has been no adjudication, and there is no appearance by Defendant; instead, a non-party asks the Court to declare void a default that the Court has not found it lacks the power to enter.

The proper procedural course is not default followed by a non-party's intervention. It was an appearance by Defendant. As the court explained in *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, "it [i.e., the court], and not [the defendant], is the arbiter of whether [the defendant] enjoys immunity[,]" and "[i]n order to avoid the risk of suffering a default, [the defendant] must enter an appearance and formally move to dismiss for lack of jurisdiction." No. 01 Civ. 9882(AGS), 2003 WL 1342532, at *1 (S.D.N.Y. Mar. 18, 2003). Ms. Albanese could have appeared and moved under Rule 12(b). She did not do so.

There is also a crucial procedural distinction the UN elides. The Clerk has entered a default under Rule 55(a), but no motion for a default judgment under Rule 55(b) has been filed, much less decided. The UN's own authority prescribes the appropriate path forward: "Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has jurisdiction over this case." *Howarth v. TCER, LLC*, No. 20-cv-03230, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021) (citing *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997)). That safeguard operates before any judgment. It does not operate to set aside the entry of default now. The Clerk of Court does not make a jurisdictional determination before entering default under Rule 55(a). *Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1148 (D. Colo. 2014) ("Even after entry of default . . . it remains *for the court* to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." (emphasis added)). Jurisdictional review, including of immunity, is this Court's obligation, and it will satisfy that obligation before entering any judgment, as it has already raised—but expressly reserved—the issue *sua sponte*, twice. ECF 16; ECF 26. The entry of default should stand in the interim.[1]

[1] As in the Motion to Intervene, the UN touches on some substantive immunity arguments. On the merits of immunity, Plaintiffs hereby incorporate by reference their prior briefing and reserve further argument for if and when the Court so orders. *See* ECF 25. Suffice it to say that, at a minimum, immunity here is a contested issue. The UN's appeal to threshold-immunity and interlocutory-appeal cases changes nothing. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170 (2017), and *Process & Industrial Developments v. Federal Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020), govern the jurisdictional standards that apply once a sovereign has appeared and invoked the Foreign Sovereign Immunities Act. They do not license a non-party (which is not a foreign sovereign) to intervene to halt the proceedings after the defendant has defaulted. The collateral-order right those cases protect belongs to a party denied immunity, not to a non-party attempting to obtain an immunity ruling before the defendant has appeared. The way to obtain an immunity ruling is the way *Presbyterian Church of Sudan* describes: the defendant appears and raises the defense.

### III. Even on the Good-Cause Factors the UN Invokes, the Default Should Stand.

The UN contends that there is "no need to parse the good cause factors." ECF 48 at 4. But that conclusion assumes the very point in dispute—whether the default is void. Unless and until the Court so determines, the Rule 55(c) factors govern. The good cause factors are culpable conduct, prejudice to the plaintiff, and a meritorious defense, *TW Telecom*, 2010 WL 5184732, at *2, and the burden of showing good cause rests with the movant, *In re Neary*, 634 B.R. 1074, 1077 (Bankr. D. Colo. 2021). All three strongly favor leaving the default in place.

#### A. Culpable Conduct.

The first factor asks about the defendant's conduct, and the defendant's conduct is the heart of this case. Defendant evaded service in South Africa at the UN's guidance. ECF 13-1, Ex. C, Berman Aff. ¶ 31; ECF 47-1. After the Court ordered substitute service and Plaintiffs complied, Defendant still did not answer, appear, or move under Rule 12(b)(5), because, as the UN insists, she simply believes herself to be un-servable. Where "[the defendant] was aware that attempts were being made to serve [her] with papers concerning a lawsuit, and made every effort to avoid receipt of those papers[,] . . . the evidence firmly supports a determination of culpable conduct by Defendant." *TW Telecom*, 2010 WL 5184732, at *4.

The UN cannot cure Defendant's culpability by pointing to its own so-called promptness, because it is not the defendant, and the factor is not about the intervenor's diligence. Moreover, even if culpability were in any way about the UN, the evidence only serves to support the UN's own gross misconduct. The UN had actual knowledge about this case from at least October 3,

2025; instructed Defendant to evade service; argues that Defendant had no obligation to recognize Court-ordered substitute service; and then asks this Court to reward its behavior. ECF 53 at 7–10.

**B. Prejudice.**

The UN's own authority, ECF 48 at 6, supplies the prejudice. *Gallatin v. VCG Mountain Ridge LLC* lists "increased potential for fraud or collusion" as a recognized form of prejudice. No. 1:24-CV-02209-CNS-SBP, 2025 WL 1242351, at *5 (D. Colo. Apr. 30, 2025) (internal citations omitted). The UN itself has entered the fraud and collusion into the record. The UN admits coordination with Defendant to assert immunity on her behalf, ECF 53-1; *see also* ECF 48 at 5; its counsel advised her to evade service, ECF 47-1; and the result is improper proxy litigation. Vacatur would reopen the immunity issue Plaintiffs briefed in February, ECF 25, reward the very coordination to evade service that that courts recognize as prejudice under Rule 55(c), and hand future defendants a blueprint: act with impunity under a false banner of immunity, default, then enlist a non-party to move to erase the consequences. That is precisely the kind of prejudice courts recognize under Rule 55(c).

**C. Meritorious Defense.**

The meritorious-defense factor measures the defaulting party's defense, and that defense belongs to Defendant, who forfeited it by defaulting. A non-party seeking to intervene cannot wield a defaulting defendant's immunity as a sword to undo default. *Cf. Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (with respect to personal jurisdiction "[a] personal defense may not be raised by another on behalf of a party"); *In re Water Rts. of Elk Dance Colorado, LLC*, 139 P.3d 660, 670 (Colo. 2006), *as modified on denial of reh'g* (July 31, 2006) ("[A] party may not collaterally attack a final judgment on subject matter jurisdiction grounds

when the party had the opportunity to challenge subject matter jurisdiction during the original action. This is so even if the trial court determined jurisdiction erroneously."). In any event, the defense of immunity the UN does press is both contested and partial. It is contested because Plaintiffs have argued that Defendant is not immune, and it is partial because the UN's proposed motion to dismiss defends a single sentence of the July 2025 report and does not address the remainder of Defendant's alleged defamatory conduct, which was clearly outside any mandate susceptible to immunity. ECF 47. In short, the UN has no defense to raise that supplies good cause to set aside the default.

## CONCLUSION

For the foregoing reasons, the Court should deny the UN's motion to vacate and leave the Clerk's entry of default in place.

Dated: June 26, 2026

Respectfully submitted,

National Jewish Advocacy Center

/s/ *Rachel Sebbag*
Rachel Sebbag
NATIONAL JEWISH ADVOCACY CENTER, INC.
1954 Airport Road, Suite 1196
Atlanta, GA 30341
rachel@njaclaw.org
332.278.1100
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record, and to be served on Defendant by email and via the social media platform X in the manner authorized by the Court's May 14, 2026 Order, ECF 26.

/s/ *Rachel Sebbag*
Rachel Sebbag