IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25–cv–02805–PAB–MDB

CHRISTIAN FRIENDS OF ISRAELI COMMUNITIES, and
CHRISTIANS FOR ISRAEL USA,

Plaintiffs,

v.

FRANCESCA PAOLA ALBANESE,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on The United Nations' Motion to Intervene. ("Motion to Intervene," Doc. No. 40.) Plaintiffs responded in opposition. (Doc. No. 53.) The United Nations ("UN") replied in support. (Doc. No. 55.) For the following reasons, the Court respectfully **RECOMMENDS** that the Motion to Intervene be **GRANTED**.

Also before the Court is the Proposed Intervenor United Nations' Motion to Vacate Clerk's Entry of Default. ("Motion to Vacate," Doc. No. 48.) Plaintiffs responded in opposition. (Doc. No. 54.) The UN replied in support. (Doc. No. 56.) For the following reasons, the Court respectfully **RECOMMENDS** that the Motion to Vacate be **DENIED**.

**BACKGROUND**

This is a defamation suit against Francesca Paola Albanese, who serves as the UN Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied

since 1967. Plaintiffs allege that Ms. Albanese issued a report containing "false, derogatory, malicious allegations and improper threats against Plaintiffs." (Doc. No. 1 at ¶¶ 11, 23.) Plaintiffs were unable to personally serve Ms. Albanese and moved for alternative service on November 28, 2025. (Doc. No. 13.) At the Court's request, Plaintiffs filed a supplemental brief addressing the possible application of immunity from suit and service of process. (Doc. Nos. 16, 25.) On May 14, 2026, the Court authorized Plaintiffs to serve Ms. Albanese via email and via the social media platform X. (Doc. No. 26.) In doing so, the Court "presume[d], without deciding, that immunity does not bar service," and noted that jurisdictional issues could be resolved at a later date. (*Id.* at 5.)

On May 15, 2026, Plaintiffs filed proof of service via email and X. (Doc. Nos. 35, 35-1.) On June 5, 2026, the UN moved to intervene for the limited purpose of asserting Ms. Albanese's immunity. (Doc. No. 40.) Before the Court could address the Motion to Intervene, Plaintiffs moved for default. (Doc. No. 43.) The Clerk entered default that same day. (Doc. No. 44.) Thereafter, the UN moved to vacate the entry of default. (Doc. No. 48.) In the Motion to Vacate, the UN incorporates by reference a Motion to Dismiss on immunity grounds that was filed contemporaneously. (*Id.* at 1; *see* Doc. No. 47.) The Motion to Dismiss is not before this Court.

## ANALYSIS

### I. Motion to Intervene

The UN moves to intervene as of right under Fed. R. Civ. P. 24(a)(2), or alternatively for permissive intervention pursuant to Rule 24(b)(1)(B). As a threshold matter, Plaintiffs contend that the UN lacks standing to intervene. (Doc. No. 53 at 3-4.) Plaintiffs also argue that even if the

UN has standing, intervention is nevertheless improper. (*Id.* at 4-15.) The Court addresses standing before analyzing the merits of the proposed intervention.

**A. Standing**

An applicant for intervention as of right must "meet the requirements of Article III if the intervenor wishes to pursue relief not requested" by an existing party. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 435 (2017). In the Tenth Circuit, an intervenor must establish standing if it seeks a different type of relief than an existing party. *Kane Cnty. v. United States*, 928 F.3d 877, 886, 888 (10th Cir. 2019) (consistent with the Supreme Court's ruling in *Town of Chester*, an intervenor may not "piggyback" on an existing party's Article III standing if the two seek different forms of relief). Because Defendant has not argued her own immunity (or sought any other form of relief), the UN seeks a different type of relief than any existing party and must establish its own standing under Article III.[1]

Article III requires a litigant to show: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; which is (2) fairly traceable to the challenged conduct; and which (3) can likely be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). An alleged future injury is imminent "if the threatened injury is certainly impending, or

[1] The UN argues that, as long as it satisfies the requirements for intervention as of right, it need not separately establish standing. (Doc. No. 55 at 7.) That may be true in other jurisdictions. Indeed, the Tenth Circuit acknowledged that much, noting that other circuits combine the Article III standing requirement with the Rule 24(a) analysis. *Kane*, 928 F.3d at 888 n.14 (citing rules in the Seventh and D.C. Circuits). But the *Kane* court stopped short of adopting that approach. *Id.* Instead, it independently analyzed Article III standing. *Id.* at 888-89.

there is a substantial risk that the harm will occur." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Plaintiffs' defamation claim is premised on their assertion that Ms. Albanese's report exceeds the scope of her immunity under the Convention on the Privileges and Immunities of the United Nations ("CPIUN"). (Doc. No. 1 at ¶¶ 2-3, 59-68.) The United States is a signatory to the CPIUN, which, as a self-executing treaty, "applies in American courts without implementing legislation." *Brzak v. United Nations*, 597 F.3d 107, 111-12 (2d Cir. 2010) (citing Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1422). The CPIUN provides UN experts on mission with "immunity from legal process of every kind" for "words spoken or written and acts done by them in the course of the performance of their mission." CPIUN art. VI, § 22(b). Such immunity is "in the interests of the United Nations and not for the personal benefit of the individuals themselves." CPIUN art. VI, § 23. As such, the Secretary-General holds the "right and duty" to waive the immunity of experts. *Id.*

Here, Plaintiffs appear to argue that rejecting immunity would only impact Ms. Albanese, not the UN. (Doc. No. 53 at 3-4.) Not so. The UN has authority to enforce its own immunity rules and procedures. (*See generally* Doc. No. 40 at 6-7 (arguing that only the Secretary-General may determine whether an expert's actions are entitled to immunity, and citing *Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights*, Advisory Opinion, 1999 I.C.J. 62, ¶¶ 50–52, 60 (April 29, 1999)).) An immunity-related ruling would impact that authority. Relatedly, immunity is a right that belongs to the UN. CPIUN art. VI, § 23 (immunity is "in the interests of the United Nations and not for the personal benefit of the individuals themselves"); *see Brzak v. United Nations*, 551 F. Supp. 2d 313, 318

(S.D.N.Y. 2008) (immunity under the CPIUN "is a right belonging to and waivable only by the U.N."), *aff'd,* 597 F.3d 107 (2d Cir. 2010). Thus, an unfavorable ruling would negatively impact the UN's right, creating a concrete injury, particularized to the UN, and imminent. *See Kane*, 928 F.3d at 888 ("An injury may be imminent even though contingent upon an unfavorable outcome in litigation."). In short, the UN has standing. *Cf. Tachiona v. United States*, 386 F.3d 205, 210-14 (2d Cir. 2004) (finding the injuries alleged by the United States were not "too amorphous" to confer Article III standing to appeal when the government argued, among other things, the district court's decision placed the United States in violation of its treaty obligations).

**B. Intervention as of Right**

Under Fed. R. Civ. P. 24(a)(2), "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane*, 928 F.3d at 889. Motions to intervene must be accompanied by pleadings setting out the "claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).[2] The Court addresses each Rule 24(a)(2) factor in turn.

**1. Timeliness**

[2] Plaintiffs are technically correct that the proposed Motion to Dismiss filed by the UN at Doc. No. 47 is not a "pleading" under Rule 24(c). (Doc. No. 53 at 2-3.) However, the purpose of Rule 24(c) is to enable the court to decide "whether the applicant has the right to intervene, and, if not, whether permissive intervention should be granted." *Alattar v. Bell*, 2014 WL 2442204, at *2 (D. Colo. May 30, 2014) (quoting *Miami Cnty. Nat. Bank of Paola, Kan. v. Bancroft*, 121 F.2d 921, 926 (10th Cir. 1941)). Here, the Motion to Dismiss reflects the UN's intent to argue lack of service and lack of jurisdiction, which implicates the intervention analysis. (*See generally* Doc. No. 47.) Moreover, these arguments offer proposed defenses, which are contemplated under Fed. R. Civ. P. 24(c). Thus, the Court will not recommend denial based on Plaintiffs' narrow definition of the word "pleading."

Timeliness is determined "in light of all of the circumstances, including the length of time since the applicant knew of [its] interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (internal citation omitted). "[D]elay in itself does not make a request for intervention untimely." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir. 2010).

The UN moved to intervene about nine months after this case was filed. For most of those nine months, however, it was not clear whether Ms. Albanese would or could be served. Indeed, the Court *sua sponte* ordered supplemental briefing on the question of whether Plaintiffs could even serve Ms. Albanese and whether the Court has subject matter jurisdiction over the claims asserted. (Doc. No. 16.) That the UN waited to file until the Court formally decided to hold the issue in abeyance, did not render the Motion to Intervene untimely. (*See* Doc. No. 26); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251 n.2 (10th Cir. 2001) (waiting to intervene until it is clear there would "be a case in which to intervene" serves the courts' interest in "discourag[ing] premature intervention that wastes judicial resources" (quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1206 (5th Cir. 1994))). Moreover, after the Court authorized alternative service on Ms. Albanese, (Doc. No. 26 at 3-5), the UN moved relatively quickly, filing the motion within three weeks. Accordingly, the Court finds the Motion to Intervene was timely.

Additionally, the Court finds the intervention would not prejudice Plaintiffs. Though they assert that intervention will reopen proceedings, duplicate efforts, and waste judicial resources (Doc. No. 53 at 11), this case is in its earliest stages, and the Motion to Dismiss does not duplicate the efforts of any party because the question of subject matter jurisdiction remains

pending. On the other hand, the UN would be prejudiced if intervention were denied because, as discussed further below, the UN has a strong interest that may be adversely affected by this litigation. While the circumstances of this intervention are unusual, they seem to weigh in favor of a conclusion that the Motion to Intervene is timely.[3]

**2. Interest and Impairment**

When seeking intervention under Rule 24(a)(2), an applicant "must have an interest that could be adversely affected by the litigation." *Kane*, 928 F.3d at 891 (quoting *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013)). This presents a "minimal burden." *Kane*, 928 F.3d at 891 (citations omitted). The applicant need only show that "impairment of its substantial legal interest is possible if intervention is denied." *Utah Ass'n of Counties*, 255 F.3d at 1253.

As noted already, a ruling that Ms. Albanese lacks immunity may impair the UN's right to immunity. (*See supra* at 4–5.) This right is directly linked to its fisc, and an adverse ruling here could negatively impact its fisc in other cases. Having met the greater burden associated with Article III standing, the UN certainly meets its minimal burden associated with intervention.

**3. Adequacy of Representation by Existing Parties**

An applicant bears a "minimal" burden to show that existing representation "may" be inadequate. *Sanguine*, 736 F.2d at 1419 (quoting *Trbovich v. United Mine Workers,* 404 U.S.

[3] Plaintiffs suggest the UN improperly "collude[ed]" with Ms. Albanese because the Motion to Intervene is "timed exactly" to disturb the entry of default against Ms. Albanese. (Doc. No. 53 at 7.) But the Motion to Intervene was filed *before* Plaintiffs moved for entry of default. (Doc. No. 40 (Motion to Intervene filed June 5, 2026); Doc. No. 41 (initial Motion for Entry of Default filed June 8, 2026).)

528, 538 n.10 (1972)). This burden is met when the representative party "failed in fulfilling [their] duty to represent the applicant's interest." *Id.* (representative party who effectively conceded the case by failing to file a responsive pleading did not adequately represent interest of intervenors).

Here, the sole Defendant has not entered an appearance or made any arguments in her own defense. That alone is enough to satisfy this factor. And even if Ms. Albanese *had* defended her own case, the UN still may not be adequately represented on the question of immunity. In *Brzak*, a former employee of the UN sued the UN and several of its officials. 551 F. Supp. 2d 313. Though each of the officials defended their own case, the UN moved to intervene on behalf of its officials for the limited purpose of asserting immunity. *Id.* at 318. Intervention was denied because the UN was already a party to the suit, *id.,* but the court allowed the UN to make a special appearance to assert immunity on behalf of the officials because the UN alone controlled that immunity. *Id.* ("[T]he U.N. may make a special appearance in the case for the purpose of asserting immunity with regard to itself and the Individual Defendants. The immunity at issue here is a right belonging to and waivable only by the U.N."). So too here. Even if Ms. Albanese appeared in this matter and asserted her own defenses, the UN has a distinct interest in asserting immunity under the CPIUN.[4]

[4] Plaintiffs argue the UN should make its arguments as it has before, via letter, rather than intervention. (Doc. No. 53 at 6.) But the mere fact that the UN frequently participates in litigation via letter does not extinguish its right to intervene under Rule 24(a)(2). *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (the right to file an *amicus curiae* brief is "no substitute" for intervention as of right); *see also Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103-04 (10th Cir. 2005) (allowing a party to intervene on the basis that "neither of the parties will raise or adequately address the issue of subject matter jurisdiction" because "[t]he issue of subject matter jurisdiction is essential to this court's review and ... our inquiry is aided by the presence of an interested party[.]").

C. **Permissive Intervention**

Even if intervention as of right was not available, the Court would recommend permissive intervention.

Pursuant to Fed. R. Civ. P. 24(b)(1)(B), "the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact."

> In determining whether permissive intervention is warranted, a court may consider such factors as: (1) whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights; (2) whether the would-be intervenor's input adds value to the existing litigation; (3) whether the petitioner's interests are adequately represented by the existing parties; and (4) the availability of an adequate remedy in another action.

*United States v. N. Colorado Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008). Here, the Court finds each factor supports permissive intervention.

First, intervention will not unduly delay or prejudice the adjudication of the parties' rights. As the Court has already noted, the matter is still in the early stages of litigation and Ms. Albanese has yet to engage. Second, the UN will add value to this litigation. Indeed, as this Court has already observed, "Plaintiffs' [immunity] arguments raise issues that will benefit from responsive arguments" of the type the UN seeks to make. (Doc. No. 26 at 5.) Third, and as noted already, Ms. Albanese has failed to appear, which means no one is asserting the interests and defenses the UN seeks to assert here. Finally, the Court does not see an alternative action through which the UN could protect the interest at issue here.

## II. Motion to Vacate

Finally, the Court turns to the Motion to Vacate, in which the UN asks to vacate the Clerk's Entry of Default against Ms. Albanese.

When questions of subject matter jurisdiction arise, a court must address them—regardless of a defendant's default status. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction at any stage in the litigation." (internal quotation marks omitted) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 514 (2006))); *Reg'l Dist. Council v. Mile High Rodbusters, Inc*., 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015) ("In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter[.]"). In other words, Ms. Albanese's default has no bearing on the intervention because even if the Clerk's entry of default against Ms. Albanese remains, the UN can argue—and the Court can decide—issues of subject matter jurisdiction.

Moreover, the Motion to Vacate is both premature and futile. If the UN prevails on its Motion to Dismiss and immunity attaches, the lack of subject matter jurisdiction will end the case and the entry of default will necessarily be set aside. *See O'Connor v. Fla. Bar*, 197 F. App'x 741, 742 (10th Cir. 2006) ("[L]ack of subject matter jurisdiction constitutes good cause to set aside an entry of default."). In that instance, the Motion to Vacate would become moot. On the other hand, if immunity does *not* attach, Ms. Albanese has been effectively served and the Clerk properly entered default against her, leaving the UN no basis on which to request that entry of default be vacated. Said another way, the Motion to Vacate is premature because it depends on resolution of the Motion to Dismiss, and even if it were not premature, the request would be either moot or necessarily denied.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that:

1) The Motion to Intervene, Doc. No. 40, be **GRANTED** and the UN be given leave to intervene for the limited purpose of asserting immunity and challenging jurisdiction under the Convention on the Privileges and Immunities of the United Nations.

2) The Motion to Vacate, Doc. No. 48, be **DENIED.**

Dated this 22nd day of October, 2026.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge